**KAPLAN HECKER & FINK LLP**

350 Fifth Avenue<br>
Suite 7110<br>
New York, NY 10118<br>
(212) 763-0883<br>
www.kaplanhecker.com

**Direct Email: jmatz@kaplanhecker.com**

August 1, 2019

**By CM/ECF**

The Chambers of the Honorable Judge John F. Keenan
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, NY 10007

    Re: *Shih v. Petal Card, Inc., et al.*, No. 1:18-cv-05495-JFK-BCM

Dear Judge Keenan,

    I represent the Defendants in this case and write on behalf of all parties. On July 30, 2019, Plaintiff filed a letter motion, along with numerous exhibits. *See* Dkt. 84. Defendants swiftly objected to the public disclosure of commercially sensitive information in Exhibit 6, Dkt. 84-6, as well as the disclosure of the individual defendants' personal phone numbers and e-mail addresses, Dkt. 84-1, -2, -3, -12, -14. The following day, the parties met and conferred, and Plaintiff agreed to redact the specific portions of the exhibits that Defendants took issue with. Consistent with that agreement, and with Judge Moses's July 31, 2019 Order, Dkt. 85, the parties hereby submit this motion to seal selected materials.

    <u>Legal Standard</u>

    "To determine whether sealing is appropriate under the common law presumption of access, the court applies a three-step balancing test." *Tropical Sails Corp. v. Yext, Inc.*, No. 14 Civ. 7582, 2016 WL 1451548, at *2 (S.D.N.Y. Apr. 12, 2016) (Keenan, J.). At the first step, the Court determines whether the relevant materials are "judicial documents." *Id.* (citing *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006)). Here, the answer to that question is yes. The second step requires the Court to assign a weight to the presumption of open access "along 'a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance.'" *Id.* (quoting *Lugosch*, 435 F.3d at 119). Here, the presumption of open access is at its nadir because the relevant excerpts of the materials do not "directly affect an adjudication." *Id.* Finally, at the third step, the court must balance competing considerations, including the possibility of "competitive harm" caused by disclosure, *In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009), and "the privacy interests of those resisting disclosure," *Stern v. Cosby*, 529 F. Supp. 2d 417, 420 (S.D.N.Y. 2007). It is to that balance between open access and countervailing considerations that we devote the rest of this letter.

    <u>Competitive Harm to Petal of Disclosing Commercially Sensitive Information</u>

    Defendants state that Exhibit 6 is an investor pitch deck shared with individuals outside of Petal under confidentiality agreements or to prospective investors in circumstances where

confidentiality was promised. Defendants state that Exhibit 6 contains commercially sensitive material—including summaries of Petal financial statements and projections, details about Petal marketing and growth strategies, details on the manner in which Petal developed its proprietary underwriting technology (and the workings of that technology), and corporate partnerships that have not been released to the public and are in some instances subject to nondisclosure agreements. Courts in this jurisdiction regularly seal such commercially sensitive information. *See, e.g.*, *Tropical Sails*, 2016 WL 1451548, at *2 (sealing "sales training manuals, internal marketing strategies, company marketing plans, and internal emails discussing marketing tests"); *Kidd v. Thomson Reuters Corp.*, 299 F. Supp. 3d 400, 408 (S.D.N.Y. 2017) (sealing "proprietary, confidential, and commercially sensitive internal training materials"); *New York v. Actavis, PLC*, No. 14 Civ. 7473, 2014 WL 5353774, at *4 (S.D.N.Y. Oct. 21, 2014) (sealing portions of documents relating to "profit projections," "internal projections," "income projections," "business plan[s]," "promotional budget funds," "future plans for the discontinuance of [a product]").

Further, Defendants state that the credit card market is highly competitive, and a start-up like Petal faces significant barriers to success. Petal's business strategies, internal data, and private third-party relationships are essential to that success. Defendants believe that the public release of the information in Exhibit 6 would risk substantial competitive harm to Petal—and imperil Petal's privacy interests, as well as those with whom it does business. *See Playtex Prod., LLC v. Munchkin, Inc.*, No. 14 Civ. 1308, 2016 WL 1276450, at *11 (S.D.N.Y. Mar. 29, 2016) (sealing "sales and revenue," "analytical testing," and "research and development" data because of the "likely harm [the company] may suffer if this highly proprietary material is revealed to [its] competitors").

Finally, although Plaintiff takes no position as to whether Exhibit 6 qualifies for sealing, because Exhibit 6 is a 32-page document, and Plaintiff's letter relies only on one statement from the first substantive slide (which is the third page of the PDF), she has agreed to the sealing of all but the first three pages of Exhibit 6. *See Actavis*, 2014 WL 5353774, at *4 (sealing commercially sensitive data where request was unopposed).

<u>Defendants' Interest in Protecting Personally Identifying Information</u>

In addition to being co-founders, Defendants Gross and Endicott are, respectively, Petal's CEO and CFO. The CEO and the CFO of a credit card company have a cognizable interest in maintaining the privacy of their personal phone numbers and email addresses. *See, e.g.*, *Brown v. Maxwell*, 929 F.3d 41 n.22 (2d Cir. 2019) (while reversing district court's sealing ruling, still "implement[ing] minimal redactions to protect personally identifying information such as personal phone numbers"); *Lown v. Salvation Army, Inc.*, No. 04 Civ. 01562, 2012 WL 4888534, at *2 (S.D.N.Y. Oct. 12, 2012) (suggesting phone numbers and social security numbers implicate similar privacy interests). Again, while Plaintiff takes no position as to whether this material qualifies for sealing under the circumstances of this case, she does not oppose the sealing, and has agreed to redact this material from the relevant exhibits.

<u>The Narrow Scope of the Proposed Redactions</u>

The information that the parties propose to seal is not quoted in Plaintiff's letter motion. All of the material on which Plaintiff expressly relies in that letter will remain publicly available. The proposed redactions' narrow scope, and Plaintiff's lack of reliance on the redacted

information, both mitigate any public interest in seeing this sensitive information. *See Optima Media Grp. Ltd. v. Bloomberg L.P.*, No. 17 Civ. 1898, 2018 WL 1587074, at *8 (S.D.N.Y. Mar. 28, 2018) (permitting redactions of "proprietary and commercially sensitive information" in a filing where the redactions were "narrowly tailored"); *Oliver Wyman, Inc. v. Eielson*, 282 F. Supp. 3d 684, 707 (S.D.N.Y. 2017) (applying a "low presumption of access" where the filings "are collateral to the Court's resolution" of the outstanding motion); *cf. Playtex*, 2016 WL 1276450, at *11 (applying a presumption of access to documents in a summary judgment filing because they were "relevant to the elements of Plaintiffs' claim," though permitting redactions).

The parties therefore respectfully request that the Court approve the parties' proposed redactions to the exhibits attached to Plaintiff's July 30, 2019 letter motion, Dkt. 84, and that this Court file publicly only the redacted versions Plaintiff proposed to the Court on August 1, 2019, Dkt. 86.

Respectfully submitted,

Joshua Matz, Esq.
Kaplan Hecker & Fink LLP

*Counsel for Defendants*