UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CASSANDRA SHIH,

                Plaintiff,

      v.

PETAL CARD, INC. f/k/a/ CREDITBRIDGE, INC., ANDREW ENDICOTT, and JASON GROSS.

                Defendants.

**ORAL ARGUMENT REQUESTED**

1:18-cv-5495 (JFK) (BCM)

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

Roberta A. Kaplan
John C. Quinn
Martha Fitzgerald
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, New York 10118
(212) 763-0883

*Counsel to Defendants*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ...................................................................................................................................1

    I.   SHIH FAILS TO STATE A CLAIM AGAINST GROSS. ................................................1

        A.  Shih Fails to Sufficiently Plead Idea Misappropriation or Unfair Competition. ...........1

        B.  Shih Fails to Sufficiently Plead Aiding and Abetting a Breach of Fiduciary Duty. ......4

        C.  Shih Fails to Sufficiently Plead Breach of Fiduciary Duty or Unjust Enrichment. ........5

    II.  SHIH FAILS TO STATE A CLAIM AGAINST PETAL......................................................6

    III. SHIH FAILS TO STATE A CLAIM AGAINST ENDICOTT. ..........................................8

        A.  Endicott Did Not Agree to Be Shih's Business Partner or Joint Venturer. ...................8

        B.  Endicott Did Not Owe Shih Any Fiduciary Duties. ......................................................10

    IV. SHIH IS NOT ENTITLED TO EQUITABLE REMEDIES. ............................................12

CONCLUSION................................................................................................................................13

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Advanced Magnification Instruments of Oneonta, N.Y., Ltd. v. Minuteman Optical Corp.*,
    522 N.Y.S.2d 287 (App. Div. 3d Dep't 1987) ............................................................... 2

*Almazan v. Almazan*,
    No. 14-Civ-311, 2015 WL 500176 (S.D.N.Y. Feb. 4, 2015) ............................... 10, 12

*Am. Bus. Training Inc. v. Am. Mgmt. Ass'n*,
    851 N.Y.S.2d 491 (App. Div. 1st Dep't 2008) .............................................................. 1

*Barton Grp., Inc. v. NCR Corp.*,
    796 F. Supp. 2d 473 (S.D.N.Y. 2011) ........................................................................ 12

*Bernstein v. Felske*,
    533 N.Y.S.2d 538 (App. Div. 2d Dep't 1988) .............................................................. 9

*Brookhaven Hous. Coal. v. Solomon*,
    583 F.2d 584 (2d Cir. 1978) ......................................................................................... 9

*Bubble Genius LLC v. Smith*,
    239 F. Supp. 3d 586 (E.D.N.Y. 2017) ......................................................................... 2

*Case v. Clivilles*,
    216 F. Supp. 3d 367 (S.D.N.Y. 2016) ....................................................................... 11

*Davydov v. Zhuk*,
    889 N.Y.S.2d 505 (Sup. Ct., Kings Cty. 2009) ........................................................... 7

*E.I. du Pont de Nemours & Co. v. Agfa-Gavaert NV*,
    335 F. Supp. 3d 657 (D. Del. 2019) ............................................................................. 6

*Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp.*,
    715 N.E.2d 1050 (N.Y. 1999) ...................................................................................... 9

*Fillmore E. BS Fin. Subsidiary LLC v. Capmark Bank*,
    552 F. App'x 13 (2d Cir. 2014) ................................................................................... 6

*Fletcher v. Atex, Inc.*,
    68 F.3d 1451 (2d Cir. 1995) ......................................................................................... 6

*Foster v. Kovner*,
    840 N.Y.S.2d 328 (App. Div. 1st Dep't 2007) ............................................................ 9

*Frankel v. U.S. Healthcare, Inc.*,
   No. 18-Civ-06378, 2019 WL 4450640 (S.D.N.Y. Sept. 17, 2019) .......................................... 10

*Gary Friedrich Enters., LLC v. Marvel Enters., Inc.*,
   713 F. Supp. 2d 215 (S.D.N.Y. 2010) ................................................................................... 12

*Ginsberg Mach. Co. v. J. & H. Label Processing Corp.*,
   341 F.2d 825 (2d Cir. 1965) .................................................................................................... 9

*Glanzer v. Keilin & Bloom LLC*,
   722 N.Y.S.2d 540 (App. Div. 1st Dep't 2001) ....................................................................... 9

*Heinert v. Bank of Am., N.A.*,
   No. 19-Civ-6081L, 2019 WL 5287950 (W.D.N.Y. Oct. 18, 2019) ........................................ 5

*Herman v. Duncan*,
   No. 17-Civ-3325, 2019 WL 2137335 (S.D.N.Y. May 16, 2019) ........................................... 9

*In re Optimal U.S. Litig.*,
   No. 10-Civ-4095, 2011 WL 4908745 (S.D.N.Y. Oct. 14, 2011) ............................................ 6

*Iowa Pub. Employee's Ret. Sys. v. Deloitte & Touche LLP*,
   919 F. Supp. 2d 321 (S.D.N.Y. 2013) ..................................................................................... 5

*Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*,
   417 N.E.2d 541 (N.Y. 1981) ................................................................................................... 9

*Longi v. New York*,
   No. 02-Civ-5821, 2006 WL 8441210 (E.D.N.Y. June 26, 2006) ........................................... 3

*Nadel v. Play-By-Play Toys & Novelties, Inc.*,
   208 F.3d 368 (2d Cir. 2000) .................................................................................................... 3

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
   446 F. Supp. 2d 163 (S.D.N.Y. 2006) ..................................................................................... 5

*Port Chester Elec. Constr. Co. v. Atlas*,
   357 N.E.2d 983 (N.Y. 1976) ................................................................................................... 6

*Precision Testing Labs., Ltd. v. Kenyon Corp. of Am.*,
   644 F. Supp. 1327 (S.D.N.Y. 1986) .................................................................................... 8, 9

*Reif v. Williams Sportswear, Inc.*,
   174 N.E.2d 492 (N.Y. 1961) ................................................................................................... 6

*Schroeder v. Cohen*,
   93 N.Y.S.3d 287 (App. Div. 1st Dep't 2019) ......................................................................... 3

*Schroeder v. Pinterest Inc.*,
   17 N.Y.S.3d 678 (App. Div. 1st Dep't 2015) ............................................................................ 2

*Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*,
   487 F.3d 89 (2d Cir. 2007) ....................................................................................................... 9

*Turner v. Temptu Inc.*,
   586 F. App'x 718 (2d Cir. 2014) ........................................................................................ 9-10

*Wallace ex rel. Cencom Cable Income Partners II, Inc. v. Wood*,
   752 A.2d 1175 (Del. Ch. 1999) ................................................................................................ 6

**Other Authorities**

Steven Drost, *No Startup Is an Island: Entrepreneurship Relies on Collaboration*,
   Guardian (Oct. 11, 2017) .......................................................................................................... 8

## PRELIMINARY STATEMENT

Defendants have been clear and consistent from day one: Shih never had the idea for Petal's business. *See, e.g.*, SAC (Dkt. 93) Ex. G; Dkt. 68 at 4; Br. 1.[1] In fact, at no point in her abbreviated discussions with Endicott in 2015 did Shih share or develop an original, actionable idea for *any* business. Despite twice amending her complaint, Shih's purported business "idea" remains variable and imprecise, and Shih still does not sufficiently plead an agreement or fiduciary relationship with any Defendant. Her opposition, built on inapposite case law and mischaracterizations of the pleadings, falls apart under the slightest scrutiny.

Shih did not contribute to Petal's development. She should not now be permitted to claim half of that company—a company that others invested (and continue to invest) significant time, effort, and financial resources to create and operate. The SAC should be dismissed in its entirety.

## ARGUMENT

**I.      SHIH FAILS TO STATE A CLAIM AGAINST GROSS.**

**A.  Shih Fails to Sufficiently Plead Idea Misappropriation or Unfair Competition.[2]**

The parties agree that Shih must have a property interest that could be misappropriated in order to state a claim for unfair competition based on misappropriation. *See* Opp. 30. Because Shih has no possible property interest in anything beyond her purported "business idea," Shih's unfair competition claim is derivative of her claim for idea misappropriation, and the requirements of (1) an existing legal relationship and (2) novelty and concreteness apply equally to both. *See, e.g.*, *Am. Bus. Training Inc. v. Am. Mgmt. Ass'n*, 851 N.Y.S.2d 491, 494 (App. Div. 1st Dep't 2008). Shih pleads neither element sufficiently, and therefore both claims fail.

---

[1] References to "Br. _" are to the Memorandum of Law in Support of Defendants' Motion to Dismiss, "Opp. _" to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss, and "¶ _" to the SAC. Capitalized terms and abbreviations have the same meaning as in Defendants' opening brief.
[2] For the reasons provided here, these claims also fail against Endicott. *See also* Br. 11-17.

1

Though Shih's allegations refer to her "insight, skills, and work product," ¶ 366, she has no cognizable property interest in any of these. Her "insight" that migrants struggle to obtain U.S. credit, "a concept directly based on information in the public domain[,] is not protectable." *Bubble Genius LLC v. Smith*, 239 F. Supp. 3d 586, 602 (E.D.N.Y. 2017); *see also* Br. 13-14. And Shih disclaims any "skill" in law, fundraising, regulatory compliance, startups, technology, and the finance industry. *See* Opp. 7, 17; ¶¶ 77, 93(a), 251, 278. Similarly, Shih does not specify what her own supposed "work product" is, let alone allege a traditional intellectual property interest in it, such as a trade secret, trademark, copyright, or patent. *See* ¶ 366. Cases recognizing work product as proprietary outside this context set a high bar that Shih's allegations do not meet: they require significant investments of labor and money, resulting material that is not "readily ascertainable," and efforts to maintain its confidentiality. *See, e.g.*, *Schroeder v. Pinterest Inc.*, 17 N.Y.S.3d 678, 692 (App. Div. 1st Dep't 2015); *Advanced Magnification Instruments of Oneonta, N.Y., Ltd. v. Minuteman Optical Corp.*, 522 N.Y.S.2d 287, 289 (App. Div. 3d Dep't 1987). By contrast, Shih's purported "work product," if any, was put together over a handful of days from reviewing publicly available materials; it involved little labor and no alleged expense on Shih's part. *See, e.g.*, ¶¶ 67, 116 (indicating Shih's "research" began on May 5 and was completed by June 7); ¶ 262 (describing Shih's research as "preliminary"); SAC Ex. A (making general, off-the-cuff remarks which Shih now unpersuasively calls an "extensive . . . analysis" (¶ 75)). It was "readily ascertainable," *see* Br. 13-17, and Shih had no expectation of confidentiality in it, *see* ¶¶ 72, 88-91.

Thus, Shih's unfair competition claim could only be based on the misappropriation of her purported "business model," which she alternately describes as her "idea" and "credit gap concept." *See, e.g.*, Opp. 4, 29-30; ¶¶ 99(e), 160, 212, 262. Any interest in this purported "idea" was not created by contract, because Shih disclosed it (and continued to share thoughts about it)

2

without negotiating confidentiality or terms for its use. *See* ¶ 40 (disclosing her idea without preconditions); ¶¶ 72, 88-91 (Endicott openly sharing her "insights" and their purported "collaborative work product" with third parties); *cf. Nadel v. Play-By-Play Toys & Novelties, Inc.*, 208 F.3d 368, 374 (2d Cir. 2000) (explaining that, in a typical contract-based "submission-of-idea" case, disclosure occurs "pursuant to a confidentiality agreement" and thereafter the parties contract "for the idea's use"). Moreover, as explained below, there was no contract of any kind between Shih and any Defendant. *See* Section III.A *infra*.

That leaves only idea misappropriation as the basis for Shih's unfair competition claim. But the SAC alleges neither element of idea misappropriation sufficiently. First, Shih had no legal relationship with any Defendant. *See* Br. 12; Sections I.C, II.B, & III *infra*. There certainly was none at the time she disclosed her "idea" to Endicott, as misappropriation law requires, *see* Br. 12-13—a point Shih markedly fails to address, *see* Opp. 29. Second, Shih's ever-changing "idea," as it is pleaded, is too vague and obvious to be susceptible of misappropriation. *See* Br. 13-16. Shih now claims that her purported "idea" was for a "uniquely cost-efficient guaranty-like structure." Opp. 30. But none of the allegations to which Shih cites, *see id.* (citing ¶¶ 76, 52, 80), set forth such a "structure" with enough specificity and concreteness that the idea could be misappropriated, let alone deemed novel. *See* Br. 13-16; *see also, e.g., Schroeder v. Cohen*, 93 N.Y.S.3d 287, 288 (App. Div. 1st Dep't 2019). Indeed, if, as the SAC alleges, Shih's idea was simply to somehow, through indefinite means, address the immigrant credit gap (while specifically *not* targeting the 50 million other "credit invisibles" in the U.S.), *see* SAC Ex. A, as already explained at length, it was neither novel nor concrete, *see* Br. 13-16.[3]

Moreover, according to both Shih's and Defendants' understanding of Petal's business,

---

[3] Novelty and concreteness are not inevitably issues for a jury. *See, e.g., Longi v. New York*, No. 02-Civ-5821, 2006 WL 8441210, at *31 (E.D.N.Y. June 26, 2006), *aff'd*, 363 F. App'x 57 (2d Cir. 2010); *cf.* Opp. 29.

3

*see, e.g.*, Opp. 1 ("Petal is a credit card company . . . ."); Br. 1 (describing Petal as a credit application and management app), no Defendant used Shih's "idea" for a "uniquely cost-efficient guaranty-like structure." They did not use Shih's "proprietary credit model" either, as the SAC alleges she never created one. *See, e.g.*, ¶ 176. In her effort to suggest Defendants used some aspect of her idea or work product, Shih appears to deliberately misrepresent Defendants' point that a slide deck she played *no part in drafting* referred *at an extremely general level* to a business model like what Petal now offers. *See* Opp. 26; *cf.* Br. 5-6 & n.6 (highlighting the constantly shifting, imprecise nature of both Shih's and Endicott's understanding in 2015 of any potential business).

For all these reasons, Shih's claims for unfair competition and idea misappropriation fail.

**B.  Shih Fails to Sufficiently Plead Aiding and Abetting a Breach of Fiduciary Duty.**

Gross cannot be liable to Shih for aiding and abetting a breach of fiduciary duty absent, among other things, (1) *actual knowledge* of a duty owed (not mere constructive knowledge), and (2) substantial assistance in its breach. Br. 8-10. Shih has failed to plead either of these elements. For starters, it is not alleged anywhere in the SAC that Gross had *actual knowledge* of any duty purportedly owed to Shih. In arguing to the contrary, Shih offers a series of non-sequiturs that only illustrate Defendants' point. For example, it cannot be "reasonably inferred" that Gross *actually knew* anyone owed Shih a duty, whether from Endicott's alleged desire to partner with Gross, their partnership developing after Shih and Endicott's conversations ended (conversations Gross never allegedly knew about, let alone that they had ended), or Gross allegedly being "a startup attorney." *See* Opp. 5, 27 (citing ¶¶ 93, 113-39, 166, 181, 234, 290). Nor can it be "reasonably inferred that Ustun told Gross about Shih," *see* Opp. 27-28, merely because Ustun allegedly received an email from Endicott about Shih and Gross later (accurately) attributed the idea for Petal, in part, to

4

Ustun's struggle to obtain credit as an immigrant, *see* ¶¶ 179-80; Br. Ex. E.[4]

Further, as previously explained at length, the messages Shih sent to Gross in early 2016 did not give him *actual knowledge* of any purported duty to Shih. Br. 8-10. Shih cites cases involving "red flags" and willful blindness to argue otherwise. Opp. 28-29. But a "lower standard of 'constructive knowledge,' such as 'recklessness' or 'willful blindness'" is insufficient for an aiding and abetting claim. *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163, 202-03 (S.D.N.Y. 2006); *see also Heinert v. Bank of Am., N.A.*, No. 19-Civ-6081L, 2019 WL 5287950, at *4-5 (W.D.N.Y. Oct. 18, 2019) (noting no independent duty to investigate arises until a defendant is "confronted with clear evidence" of a breach of fiduciary duty); Opp. 28 (acknowledging Shih never provided Gross with clear evidence).[5]

Moreover, Shih does not sufficiently address how Gross "substantially assisted" any purported breach of fiduciary duty. *See* Br. 9-10; *cf.* Opp. 5, 27-29. For example, the SAC does not plausibly allege that Gross "create[d] a false origin story" for Petal. *See* n.3 *supra*; Br. 9-10. Nor does it plausibly allege that Gross "rebrand[ed] CreditBridge as Petal" in some frantic "response" to Shih's early 2016 messages. *Cf.* Opp. 28. Rather, it alleges Gross simply did not respond to Shih's messages, and the rebrand occurred *six months later*. *See* SAC ¶¶ 189-90, 201.

### C. Shih Fails to Sufficiently Plead Breach of Fiduciary Duty or Unjust Enrichment.

Shih's fiduciary duty and unjust enrichment claims against Gross fail because they shared no relationship at all, let alone one that led to Shih's reposing of trust in or reliance on Gross, or Gross's inducement or acceptance of either. Br. 10-11. Shih argues that this supposed relationship

---

[4] Shih misleadingly claims that Gross lied about Petal's origins based on Ustun's description of his experience obtaining credit as "straightforward." *See* Opp. 3, 5, 12, 28. Yet in the very same email, Ustun also notes that it took "over a year" to build a credit score, required a $1,000 down payment, and involved "pain points," including a struggle to get the $1,000 back from the bank—hardly a cake walk. *See* Br. Ex. E.
[5] Even if willful blindness were legally sufficient, the SAC does not allege, as required, that Gross (1) "subjectively believe[d] that there [was] a high probability" of a breach of duty and (2) took "deliberate actions to avoid learning of that fact." *Iowa Pub. Employee's Ret. Sys. v. Deloitte & Touche LLP*, 919 F. Supp. 2d 321, 345 (S.D.N.Y. 2013).

5

is based solely on Gross's status as a promoter and executive of Petal. *See* Opp. 27. But Shih was never Petal's shareholder, *see* Section II *infra*, nor Petal's co-promoter with Gross, *see* Br. 12-17. Moreover, Gross had no knowledge otherwise. *See* Section I.B *supra*.

## II.     SHIH FAILS TO STATE A CLAIM AGAINST PETAL.

Shih attempts to hold Petal liable for alleged wrongdoing by others that occurred before Petal even existed. In doing so, Shih does not address Defendants' argument, and so concedes, that prior to February 2016, Petal had no agents and cannot be held vicariously liable for the acts of its nonexistent agents. *See* Br. 18. Moreover, each of Shih's three separate theories of liability concerning Petal relies on mischaracterizations of the law and of Shih's own allegations.

First, Shih misstates the applicable law for veil piercing under an alter ego theory. *See* Opp. 25.[6] For a corporation to be an alter ego, "[it] must be a sham and exist *for no other purpose* than as a vehicle for fraud." *Wallace ex rel. Cencom Cable Income Partners II, Inc. v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999) (emphasis added).[7] Shih alleges no such thing. There are no allegations, for example, that Petal was inadequately capitalized, that it failed to observe corporate formalities, that the dominant shareholder siphoned its funds, or that it was "a facade" for that shareholder. *See, e.g.*, *E.I. du Pont de Nemours & Co. v. Agfa-Gavaert NV*, 335 F. Supp. 3d 657, 675 (D. Del. 2019); *see also, e.g.*, *In re Optimal U.S. Litig.*, No. 10-Civ-4095, 2011 WL 4908745, at *3 (S.D.N.Y. Oct. 14, 2011) (listing similar factors). Instead, Shih alleges that she and Endicott tossed around non-actionable, high-level ideas in a handful of online exchanges, then fell out of

---

[6] *Reif v. Williams Sportswear, Inc.*, 174 N.E.2d 492, 495 (N.Y. 1961), does not hold that a corporation is always the alter ego of its promoters. Alter ego and promoter liability are two distinct legal concepts with separate analyses.

[7] Because Petal is a Delaware corporation, Delaware law applies. *See Fillmore E. BS Fin. Subsidiary LLC v. Capmark Bank*, 552 F. App'x 13, 15 (2d Cir. 2014) (citing *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)). As the veil piercing standard is nearly identical in both Delaware and New York, Shih's claim fails under either state's law. *See Port Chester Elec. Constr. Co. v. Atlas*, 357 N.E.2d 983, 986 (N.Y. 1976) (concluding under New York law that "[t]he determinative factor is whether 'the corporation is a dummy for its individual stockholders who are . . . carrying on the business in their personal capacities for purely personal rather than corporate ends.'") (citation omitted).

touch. ¶¶ 27, 50, 83. By the time Petal was formed, they had not spoken for months. ¶¶ 108, 156. Meanwhile, Endicott worked with others (who, unlike Shih, *had* experience in technology and startups) to develop an actual business, which they then incorporated and operated together. ¶¶ 128-31, 136, 156. Petal is a legitimate business with an independent board of directors, external investors, and hundreds of shareholders; it is not, nor is it alleged to be, a sham or incorporated solely to commit fraud.

Second, Shih argues that she is an "equitable shareholder" of Petal. *See* Opp. 21, 25, 27; ¶ 372. Defendants are aware of no case under New York law—or Delaware law, for that matter—that transforms someone into a corporation's "equitable shareholder" based on events that occurred prior to incorporation and, on that basis, holds the corporation liable after the fact. *See* Opp. 21, 25. Shih cites nothing to support that assertion. Indeed, the decisions she relies on do not relate to her articulation of an "equitable shareholder," *see id.* 26-27, except one non-binding opinion which simply holds that two owners of a closely held, fully operational business were fiduciaries, *see id.* 21 (citing *Davydov v. Zhuk*, 889 N.Y.S.2d 505 (Sup. Ct., Kings Cty. 2009)).

Third, Shih contends that Petal is liable based on alleged unwritten, pre-incorporation contracts between her and Endicott. *See* Opp. 24-25; ¶¶ 319, 330. A corporation can be bound by pre-incorporation agreements only if it expressly adopts them or knowingly accepts their benefits. Br. 19; Opp. 25. Shih does not allege express adoption by Petal of any unwritten contracts she supposedly reached with Endicott. Instead, she claims that Petal "accept[ed] . . . the benefits of pre-incorporation contracts at incorporation." Opp. 25. But there was no contract between Shih and Endicott. Br. 21-23; *see also* Section III.A *infra*. And even if there were, Petal did not "accept" any benefits associated with that contract. Shih argues that Petal accepted her "assets [] in the form of the business concept, market research, and business plan." Opp. 25. Yet as Defendants have

7

explained, Shih does not sufficiently allege any distinct "business concept" or "business plan," and her "market research" was not an "asset" that could be stolen. *See* Br. 1-2; Section I.C *supra*. Nor does Shih allege, plausibly or otherwise, that Endicott or Petal ever made use of her idea to "co-sign the credit of new migrants," SAC Ex. A, her "market research," or any other materials, while creating Petal or speaking with investors, *see* Br. 16-17. Finally, as Gross and Endicott are not liable to Shih, *see* Section I *supra*; Section III *infra*, they have no liability to be imputed to Petal.

## III.  SHIH FAILS TO STATE A CLAIM AGAINST ENDICOTT.

### A. Endicott Did Not Agree to Be Shih's Business Partner or Joint Venturer.

Shih's contract and quasi-contract claims all fail for the same reasons: Endicott and Shih never agreed—or even thought they had agreed—to start a business together. Informal, nonbinding collaborations are characteristic of startup culture.[8] And though contracts to create and run a venture as equal partners are typically heavily negotiated and memorialized in writing, *see Precision Testing Labs., Ltd. v. Kenyon Corp. of Am.*, 644 F. Supp. 1327, 1342 (S.D.N.Y. 1986), there is no allegation that Shih and Endicott undertook that process, or that they decided to forgo it. Rather, here, Shih relies exclusively on informal and tentative online banter to claim that Endicott bound himself to run a business with her based on a vague idea. *See* Opp. 14-15; ¶ 54. But there was no offer and acceptance, *see* Br. 21-22, no agreement on material terms, *see id.* at 22-23, no intent to be joint venturers, *see id.*, no shared control over their purported enterprise, *see id.*, and no meaningful contribution by Shih to the venture, *see* Section I.A *supra*.

Notably, Shih cites no court decision finding a contract under similar circumstances, *cf.* Opp. 13-20, and her arguments in support of some contract or similar relationship ring hollow.

---

[8] *See, e.g.*, Steven Drost, *No Startup Is an Island: Entrepreneurship Relies on Collaboration*, GUARDIAN (Oct. 11, 2017), https://www.theguardian.com/small-business-network/2017/oct/11/startup-business-success-entrepreneurship-collaboration; Br. 23-24; *cf.* Opp. 17.

There were indeed "gaping holes" in the supposed agreement between Endicott and Shih to start a business, including the very nature of the enterprise they were to own and operate, as well as each party's respective roles in it. *See* Br. 22-23. "[D]efiniteness as to material terms is of the very essence in contract law." *Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*, 417 N.E.2d 541, 543 (N.Y. 1981); *see also Glanzer v. Keilin & Bloom LLC*, 722 N.Y.S.2d 540, 541 (App. Div. 1st Dep't 2001); Br. 21-22. But here, "there is no way to tell" from Shih and Endicott's alleged conversations "how [they] intended to establish" a business, or what the business and Shih's responsibilities might be, for example. *Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp.*, 715 N.E.2d 1050, 1053 (N.Y. 1999); *see also* Br. 4-5; ¶ 94. These are essential terms to any agreement to share and run a business, including a joint venture. *See, e.g.*, *Herman v. Duncan*, No. 17-Civ-3325, 2019 WL 2137335, at *9 (S.D.N.Y. May 16, 2019); *Precision Testing Labs.*, 644 F. Supp. at 1349-50 (holding no joint venture where "it was not determined who would be the company's directors and officers or who would manage its operations"); *see also Ginsberg Mach. Co. v. J. & H. Label Processing Corp.*, 341 F.2d 825, 828 (2d Cir. 1965) ("A term is 'essential,' . . . if it seriously affects the rights and obligations of the parties. . . .").[9] A court "may not supply such specifics by implication." *Brookhaven Hous. Coal. v. Solomon*, 583 F.2d 584, 594 (2d Cir. 1978); *see also Bernstein v. Felske*, 533 N.Y.S.2d 538, 540 (App. Div. 2d Dep't 1988).

Further, as both parties' alleged conduct showed, there was no intent to be bound in a business, nor a promise by Endicott to do so, nor reasonable reliance on such a promise by Shih. *See* Br. 23-24; *see also Turner v. Temptu Inc.*, 586 F. App'x 718, 721 (2d Cir. 2014) (finding no intent to form joint venture where parties "were still 'undecided' even on the 'actual product' they

---

[9] Shih feebly attempts to frame these issues as mere minutiae by citing cases with facts unlike the allegations here. *See* Opp. 16, 20 (citing, *e.g.*, *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89 (2d Cir. 2007) (involving "comprehensive" written agreement addressing "all material terms"); *Foster v. Kovner*, 840 N.Y.S.2d 328 (App. Div. 1st Dep't 2007) (plaintiff performing by forming a company and working as its CEO for months)).

9

would develop together"). Shih disingenuously claims she reached out to Endicott "nine times" to follow up on his progress in fundraising. *See* Opp. 18, 19. But the SAC alleges she reached out to Endicott directly only three times before disappearing from his life for months. *See* ¶¶ 119, 141, 145; Br. 6. She never asked about his progress, and once simply wished him a happy birthday. *See* ¶¶ 119, 141, 145. Shih's assertion that Endicott "objectively manifested" an "intent to be bound" by "bringing CreditBridge to a 'pitch phase,'" Opp. 17, 19, assumes that the business purportedly being pitched was based on Shih's ideas. As explained above, *see* Section I.A *supra*, it was not.

It would be unjust for this Court to impose a binding obligation where none exists and allow Shih to take half a company that others built with enormous investments of *actual* labor, capital, and property[10]—thus her quasi-contract claims fail. *See* Br. 24-25 (addressing promissory estoppel, unjust enrichment, and no breach). These claims should also be dismissed as duplicative of her breach of contract claims. *See, e.g.*, *Frankel v. U.S. Healthcare, Inc.*, No. 18-Civ-06378, 2019 WL 4450640, at *4-5 (S.D.N.Y. Sept. 17, 2019); Br. 24.

### B. Endicott Did Not Owe Shih Any Fiduciary Duties.

The parties agree that to state a claim for breach of fiduciary duty, Shih must allege that she reposed trust and confidence in Endicott. *See* Br. 10-11; Opp. 21. But it is "axiomatic" that Endicott must also have *accepted* her trust. *Almazan v. Almazan*, No. 14-Civ-311, 2015 WL 500176, at *12 (S.D.N.Y. Feb. 4, 2015). Here, the allegations do not support that conclusion. Nor do they support the existence of any of the fiduciary relationships Shih claims.

Endicott was neither Shih's co-venturer nor co-promoter. These duties exist where two people agree to go into business together or agree that one will take the lead in setting up a new business. For the reasons already discussed, these claims fail. *See* Section III.A *supra*; Br. 26, 28.

---

[10] Defendants do not ask the Court to look outside the pleadings to see that Endicott was enriched through his own efforts. *Cf.* Opp. 29. The SAC alleges it. *See* Br. 16-17, 23-24.

10

<u>Endicott owed no duty simply because he is an attorney.</u> Shih asserts that Endicott "offer[ed] to apply his legal skills to Shih's company," analyzed "regulatory questions," and "rendered informal legal opinions." Opp. 15, 21. But the SAC does not plausibly allege any of this. Shih relies primarily on a casual conversation over Facebook, in which she sarcastically wrote, "You got skills?", and Endicott replied, "I'm a lawyer and an investment banker. I would say so." ¶ 27. This exchange hardly transformed Endicott into Shih's personal attorney, gave Shih a reasonable basis to assume otherwise, or made Endicott aware of some unique reliance by Shih. *See* Br. 26-27. The same is true of Endicott's alleged willingness to research regulations. *See* ¶ 83; Br. Ex. C; Opp. 21. While he proposed to research how "credit information w[ould] be used in credit decision-making" and "start-up burdens" (business concepts as much as legal ones), he also asked Shih to investigate "what New Zealand laws say about foreign entities pulling credit / consumer finance information." *See* SAC Ex. B; Br. Ex. C. That is not how an attorney interacts with a client. Likewise, Endicott stating that Shih's "concept of bridging would be akin to being a guarantor," ¶ 76, is an observation, not a "legal opinion," *cf.* Opp. 15. Even if it were, the "simple act of an attorney giving advice to an individual does not automatically create an attorney-client relationship." *Case v. Clivilles*, 216 F. Supp. 3d 367, 379 (S.D.N.Y. 2016) (citation omitted).

<u>Endicott was not Shih's fundraising agent.</u> Defendants have pointed out two key flaws in this claim: first, Shih describes Endicott as her "equal partner," not her subservient agent; and second, the allegations do not reveal Shih asserting any control whatsoever over Endicott. Br. 27. Shih's only response is that she "directed him to 'start thinking about start-up funding and places to get it[,]' . . . 'advance fundraising[,]' . . . and by specifying terms to which he could bind her in contracts." Opp. 22. But what can reasonably be drawn from the SAC is that Endicott at no point agreed to follow Shih's purported orders or act at her behest. The notion that Shih asserted control

11

over Endicott is flatly inconsistent with the rest of the SAC. *See, e.g.*, ¶ 77 ("[Shih] think[s] it's not too early to start thinking about start-up money and places to get it," but does not order Endicott to look into this); ¶ 103 (Shih not asserting control over Endicott's conversations with third parties); ¶¶ 148-51. Indeed, the SAC claims that "Shih allowed Endicott to pursue financing for CreditBridge without any interference from her." ¶ 152.

Endicott owed Shih no duty as a Petal shareholder. These claims, *see* ¶¶ 270-71, 311, fail for the reasons described in Section II, *supra*. Nor did Endicott accept Shih's trust and confidence. It is possible that Shih subjectively believed her talks with Endicott had progressed further than they did. Endicott, however, never agreed to accept legal obligations or start a company with her. *See Almazan*, 2015 WL 500176, at *12; Br. 28. Shih fails to meaningfully respond to this critical point. She purports to provide "factors" that courts use to evaluate fiduciary relationships but then cites cases that neither reference nor support those factors. *See* Opp. 23-24.

## IV.  SHIH IS NOT ENTITLED TO EQUITABLE REMEDIES.

Equitable remedies are available only where there is no adequate remedy at law. *See, e.g.*, *Gary Friedrich Enters., LLC v. Marvel Enters., Inc.*, 713 F. Supp. 2d 215, 222, 233 (S.D.N.Y. 2010) (constructive trust and accounting). Defendants raise four grounds for dismissing her constructive trust claim. Br. 28-30. Shih addresses three in only conclusory terms and does not at all explain how monetary damages are insufficient to redress her purported injuries. *Cf.* Opp. 24. And contrary to Shih's assertions, *see* Opp. 24, specific performance in New York remains an "extraordinary remedy for which [Shih] must demonstrate that remedies at law are incomplete and inadequate to accomplish substantial justice." *Barton Grp., Inc. v. NCR Corp.*, 796 F. Supp. 2d 473, 502 (S.D.N.Y. 2011). As adequate remedies at law are available, Shih is not entitled to the equitable remedies she seeks.

## CONCLUSION

For the foregoing reasons, Defendants respectfully submit that the SAC should be dismissed in its entirety with prejudice.

Respectfully submitted,

/s/ Roberta A. Kaplan

December 9, 2019

Roberta A. Kaplan
John C. Quinn
Martha Fitzgerald
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, New York 10118
(212) 763-0883

*Counsel to Defendants*