

April 26, 2021

**By ECF**

Honorable Judge Barbara Moses
United States District Court, Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 740
New York, NY 10007

        Re:    *Shih v. Petal Card, Inc. et al.*, No. 1:18-cv-5495

Dear Judge Moses,

      We represent the nonparties Tripsha, Inc. ("Tripsha"), Radiant Lifestyle LLC ("Radiant"), Lane Kauder ("Kauder"), Howard Altman ("Altman"), Kerry Botensten ("Botensten"), and Benjamin Leff ("Leff") (together, the "Nonparties"), each of whom was served with a subpoena by Defendants in the above-referenced case (the "Subpoenas"). We write in accordance with Your Honor's Individual Practices § 2(e) to respond to Defendants' April 21, 2021 letter motion for a conference to compel the production of documents pursuant to the Subpoenas.

      The crux of Defendants' proposed motion to compel is that they need a broad range of recent documents from the Nonparties relating to "[Plaintiff's] *modus operandi* in forming businesses and how she has formalized her ideas and engaged in legally binding agreements with other potential co-founders, business partners, and advisors" in order to "test" Plaintiff's claim that she entered into a business relationship with Andrew Endicott in 2015. This purported rationale is inadequate to justify the extensive third-party discovery sought by Defendants herein. For the reasons set forth below, Defendants' demand for documents post-dating February 15, 2019 is unsupportable on the facts of this case and the Court should sustain the Nonparties' other objections on the grounds that Defendants seek irrelevant documents and their requests are unduly burdensome. Finally, any determination as to the Nonparties' obligation to produce a privilege log should be deferred until after Plaintiff produces her privilege log as the Nonparties anticipate that document will be duplicative of any privilege log demanded of the Nonparties.

**I.**    **Background**

      In the Complaint, Plaintiff asserts claims against Defendants for *inter alia* breach of fiduciary duty and breach of actual or implied contract arising out of Defendants' alleged misappropriation of Plaintiff's business idea in and around 2015 through early 2016. Other than Kauder, who is Plaintiff's husband, the Nonparties are connected to Plaintiff through her current business ventures, none of which were in existence in 2015 and 2016. Tripsha was founded by Plaintiff in October 2018; Radiant was founded by Plaintiff in late 2017; Altman worked as an advisor to Tripsha beginning on October 31, 2018[1]; Leff worked as an independent contractor from Tripsha from April 12, 2019 through October 7, 2019; and Botensten has been the Head of Trips at Tripsha since March 2019.

---

[1] Altman was not involved in the formation of Tripsha or any other businesses with Plaintiff. *See* Altman Subpoena Responses.



The Subpoenas seek documents that overlap largely, if not entirely, with documents requested from Plaintiff. (*Compare* Defendants' First Requests for the Production of Documents, attached hereto as <u>Exhibit A</u>, *with* Subpoenas.) Tripsha, Radiant, Kauder and Altman produced documents responsive to the Subpoenas directed at them subject to the objections set forth in their respective responses. Leff and Botensten, each of whom has only been affiliated with Plaintiff since 2019 and in Leff's case for only six months, objected to the Subpoenas in their entirety.

**II.       Defendants Agreed to the February 15, 2019 Cutoff Date With Respect to Plaintiff's Ongoing Businesses**

Defendants first contend that the Nonparties should be required to produce documents post-dating February 15, 2019, notwithstanding Defendants' agreement in a July 3, 2019 letter from Joshua Matz, counsel for Defendants, to Peter Dawson, counsel for Plaintiff, that such date reflected, "a reasonable period in light of [Plaintiff's] allegations" for documents relating to her ongoing business operations and potential new business ventures. Defendants now claim that (i) the cutoff date was limited to five specific document requests and was not a global discovery cutoff in the litigation and (ii) the Nonparties were not identified in the July 3, 2019 letter as subject to the agreement. The Court should reject Defendants' attempted end run around their own agreed to discovery cut off and hold the Nonparties are not obligated to produce documents post-dating February 15, 2019.

<u>First</u>, Defendants' reliance on the fact that the July 3, 2019 letter addressed five specific document requests is a red herring. All of those requests related to Plaintiff's ongoing businesses and new business ventures, *i.e.*, the very topic from which Defendants now seek discovery from the Nonparties. *See* <u>Ex. A</u>. Defendants' agreement to limit the time frame for that subject matter to documents pre-dating February 15, 2019 should therefore apply equally to the corresponding documents requested from the Nonparties and Defendants' motion to compel later documents from the Nonparties should be denied.

<u>Second</u>, the fact that the Nonparties were not identified in the July 3, 2019 letter is irrelevant. Defendants' effort to obtain documents from the Nonparties is nothing more than an improper attempt to circumvent their own agreement with Plaintiff as to a cut off date. That is not allowed under the Federal Rules, which dictate that a party may not seek discovery from a third party that "could and should be obtained" from a party to the case. *See Torre v. Charter Communications, Inc.*, 2020 WL 7705940, at *1 (S.D.N.Y. Dec. 28, 2020); *see also Alcon Vision, LLC v. Allied Vision Group, Inc.*, 2019 WL 4242040 (S.D.N.Y. Sept. 6, 2019). Thus, irrespective of whether Defendants specified in the July 3, 2019 letter that the discovery cutoff applied to nonparties, the Court should find that Defendants' agreement to limit the time frame for document requests relating to Plaintiff's ongoing businesses applies to all documents sought in the case, including from the Nonparties.

Therefore, the Court should not compel the production of documents after February 15, 2019. Furthermore, because Leff and Botensten only became affiliated with Plaintiff and Tripsha after February 15, 2019, they do not possess any responsive documents and they should not be compelled to respond to their subpoenas in their entirety.



### III. The Subpoenas Seek Information and Documents Beyond That Which is Authorized under the Federal Rules

Apart from the cutoff date, Defendants argue more broadly that the Subpoenas seek information that is relevant and the Subpoenas do not impose an undue burden on the Nonparties. Defendants are incorrect on both accounts. It is Defendants' burden to show that the information sought by the Subpoenas is relevant and material to the allegations and claims at issue in the case. *Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P* ., 2014 WL 5420225, at *6 (S.D.N.Y. Oct. 24, 2014). If Defendants satisfy that burden, the inquiry turns to whether the Subpoenas impose an undue burden on the Nonparties. When determining whether a subpoena imposes an undue burden, the Court should look to "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, … and the burden imposed." *United States v. Int'l Bus. Mach. Corp.*, 83 F.R.D. 97, 104 (S.D.N.Y. 1979). For the reason set forth below, the requests are irrelevant and impose an undue burden on the Nonparties.

#### A. The Information Sought is Not Relevant

Defendants' asserted basis for the relevance of the documents sought is that how Plaintiff interacts with potential business partners in forming businesses is relevant to Defendants' defense that Plaintiff's communications with Endicott were "informal communications" that did not, as Plaintiff claims, impose contractual and fiduciary duties on Defendants. *See* Hletko Letter at 2-3 (Defendants claim they "must obtain evidence demonstrating . . . [Plaintiff's] *modus operandi* in forming businesses and how she has formalized her ideas and engaged in legally binding agreement with other potential co-founders, business partners, and advisors. . . . [and] how she conducts herself when she genuinely believes she is starting a business with someone[.]"). Assuming *arguendo* that such documents are, in fact, relevant to Defendants' defenses, the Nonparties have already produced responsive documents in their possession and the Court should hold no further productions are required.

<u>First</u>, Tripsha, Radiant and Kauder have produced nonprivileged documents responsive to the Subpoena requests directed at Plaintiff's communications and conduct surrounding the formation of businesses. With respect to Botensten and Leff, Defendants' position on the Subpoenas' relevance supports those Nonparties' argument that they have no relevant documents. Neither Leff nor Botensten were involved with the formation of Tripsha or any other of Plaintiff's businesses, as their respective affiliations with Plaintiff did not even begin until 2019. Therefore, even accepting Defendants' theory of relevance, the Court should find that Leff and Botensten do not possess any relevant responsive documents and the Court should not compel them to comply with the Subpoenas.

Second, Defendants' stated rationale cannot sustain the numerous requests in the Subpoenas that seek a broad range information regarding Ms. Shih's conduct in operating her current businesses. Defendants appear to believe they are entitled to such additional information without articulating how it is relevant to any claim or defense in this case. *See* Hletko Letter at 2-3. This omission is unsurprising because there is no credible argument for how Ms. Shih's present-day business experience and practices are relevant to whether she entered into a business relationship with Andrew Endicott in 2015. Therefore, there simply is no probative value that information offers to any material issue in this lawsuit. In light of the questionable probative value of the information sought by Defendants, its production by the Nonparties is not



proportional to the needs of the case and should not be compelled.

### B. The Subpoenas Impose an Undue Burden on the Nonparties

Further, even if information about Plaintiff's current business operations were relevant in the underlying action (which it is not), the Court should not compel the production of such documents from the Nonparties because the Subpoenas are unduly burdensome. The Subpoenas seek documents relating to *inter alia* Shih's formation of, operation of, fundraising for, and communications regarding Tripsha and any other potential business ventures, and Plaintiff's experience as an entrepreneur. As set forth above, the overbreadth of the Subpoenas in relation to the proffered relevance to the underlying action imposes an undue burden on the Nonparties.

That burden is magnified by the fact that the documents sought in the Subpoenas could be – and indeed, were – obtained from Plaintiff.[2] (*See* Ex. A; Subpoenas.) This is made clear by the fact that the documents produced by Tripsha and Radiant in response to the Subpoenas overlapped entirely with documents subsequently produced by Plaintiff. Courts regularly limit discovery from nonparties where such information can be or is sought from a party and the Court similarly should do so here. *Vangelakos v. Wells Fargo Bank, N.A.*, 2014 WL 12772257, at *1 (S.D.N.Y. June 26, 2014) (court may limit nonparty discovery if "the party seeking discovery has ample opportunity to obtain the information by discovery in the action[.]"); *see also Alcon Vision, LLC*, 2019 WL 4242040, at *1 (determining whether a subpoena imposes an undue burden requires considering "whether the information … is available from any other source."). Defendants' argument to the contrary relies on case law that is inapposite and outside of this Circuit. *See* Hletko Letter at 4. The Court therefore should find that because Defendants could and did seek the subpoenaed documents from Plaintiff, the Nonparties should not be compelled to further respond to the Subpoenas.

Finally, requiring the Nonparties to produce a privilege log at this juncture impose an undue burden because that log would overlap entirely with the forthcoming privilege log from Plaintiff. The Court should therefore defer any decision as to whether to compel the Nonparties to produce a privilege log until after Plaintiff produces her privilege log to protect against any duplicative and burdensome work.

Taking the foregoing undue burden analysis as a whole, it is apparent that the Subpoenas, all of which are directed at current businesses or associates of Plaintiff's current business ventures, are overbroad, seek irrelevant information, and are duplicative of discovery sought and obtained from Plaintiff. Contrary to Defendants' conclusory assertions, it is thus clear the Subpoenas were issued for the purpose of harassing and imposing a financial and reputational burden on Plaintiff and those associated with her. Accordingly, and for all the reasons set forth herein, the Court should uphold the Nonparties' objections to the Subpoenas and deny Defendants' motion to compel.

The Nonparties look forward to discussing these issues with Your Honor on May 3, 2021 at 11:00 a.m.

---

[2] Defendants make a number of allegations directed at Plaintiff's document production. *See* Hletko Letter at 3, 4. These allegations are not directed at the Nonparties and accordingly they offer no response thereto.

April 26, 2021
Page 5 of 5



                                          Respectfully submitted,

                                          YANKWITT LLP

                                        By: _____
                                             Cassandra M. Vogel
                                           Dina L. Hamerman

cc: All counsel of record (by ECF)