

July 28, 2021

**BY ECF**
The Honorable Barbara Moses
United States Magistrate Judge
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 740
New York, NY 10007

      Re:    *Shih v. Petal Card, Inc., et al.*, No. 1:18-cv-05495-JFK-BCM

Dear Judge Moses:

      We represent Plaintiff Cassandra Shih in the above-referenced matter. We write pursuant to the Court's Order dated July 1, 2021, to raise unresolved privilege issues arising from the privilege logs that Defendants have served to date. ECF No. 160 ¶ 1.

      On July 1, 2021, immediately following the June 30 conference before Your Honor, we learned that Defendants had retained new counsel. Prior counsel had served a privilege log with three (3) entries on June 7, 2021 addressed to productions made on or before May 7, 2021; and a second privilege log on June 28, 2021, with over 1100 entries for productions made on May 25 and May 28, 2021. In response to Plaintiff's request that Defendants address certain structural issues with their logs, including the failure to serve a chronological log, Defendants' new counsel served revised privilege logs on July 14, 2021. The parties conferred concerning Defendants' revised logs on July 20, 2021. Defendants then served their second revised privilege logs on Friday, July 23, 2021, and produced additional documents on Saturday, July 24, 2021.[1]

      This letter raises issues regarding Defendants' claims of privilege for communications between Defendants Endicott and Gross about the formation of CreditBridge and about Ms. Shih; Defendants' claims of privilege based on the unsubstantiated assertion that Gross was in-house counsel; the absence from the log of communications between Endicott and Gross about this case; and structural flaws that render Defendants' log non-compliant with Local Rule 26.2.

      **Business Communications between Defendants Endicott and Gross.** Defendants claim attorney-client privilege over extensive communications among Defendants Endicott and Gross between November 2015 and April 2016 on the ground that Gross served as "in-house counsel" for CreditBridge (Petal's predecessor) and was providing legal advice to the entity. These communications largely fall into two categories. *First*, the log includes a number of redacted documents from 2015 and early 2016. The redactions are in emails between Endicott and Gross about the development and organization of CreditBridge, purportedly on the basis of privilege, without any indication in the remaining text of the email that legal advice was being sought or given. Rather than seeking legal advice, the communications appear to be between Gross and Endicott as co-founders about the development of the company. *Second*, the first 22

---

[1] At the June 30 conference, the Court directed Defendants to make a further document production no later than August 31, 2021. ECF No. 160 ¶¶ 3,4. Defendants' counsel have indicated that they expect to prepare an additional log of privileged documents following the August 31, 2021 production.



pages of the July 23 log lists organizational, incorporation and regulatory emails between Endicott and Gross from November 2015 through incorporation in February 2016. It appears that these emails pertain to significant issues in this case, insofar as the communications will show Endicott and Gross made decisions about the issuance of stock, incorporation, and regulatory compliance – all of which Endicott also had discussed with Plaintiff – as well as discussions about what Endicott and Gross considered to be the intellectual property they contributed to the company as consideration for the stock issued to them.

Communications regarding business issues are not protected by privilege. *In re County of Erie*, 473 F.3d 413, 421 n.9 (2d Cir. 2007) ("Normally, the capacity in which a lawyer receives or generates a communication is related to determining whether the communication actually involves a lawyer; in other words, a lawyer not acting in her capacity as a lawyer is not a lawyer for the purpose of the attorney-client privilege."); *In re Pfizer Inc. Securities Litigation*, 1994 WL 263610, *2 (S.D.N.Y. 1994), *adhered to on reconsideration*, 1994 WL 661104 (S.D.N.Y. 1994) ("[S]ince the documents are not 'primarily concerned' with conveying legal advice, they do not fall within the scope of the attorney-client privilege.").

**Communications between Co-Defendants about Plaintiff.** Defendants claim attorney-client privilege over many communications between co-Defendants Endicott and Gross about Plaintiff herself that have been withheld or produced in redacted form and appear on pages 22-24 of Defendants' July 23 log. *See* Exhibit A hereto. These include communications dated February 16, 2016; March 21, 22, 24 and 26, 2021 (including with Jason Gross's father, Ken Gross, who is also asserted to be acting as a lawyer); and April 20, 2016. Significantly, these very log entries appear to correspond in time and subject matter to the emails that Judge Keenan identified in his September 23, 2020 Opinion as plausibly supporting Plaintiff's claim that Gross had actual knowledge of and knowingly participated in Endicott's willful refusal to treat Shih with "the finest loyalty and utmost good faith." (ECF 116 at pp. 43-44, *citation omitted*). Moreover, many of these communications refer to "Project Kiwi," which is a code-name Defendants used for communications about Plaintiff, a native of New Zealand. These "Project Kiwi" log entries do not reveal any "privileged" or "confidential" designations in the subject line, suggesting that they not communications exchanged for the purposes of securing or providing legal advice, but are instead communications between partners discussing Shih's claims. Some of the concerning emails between co-Defendants actually forward communications with the Plaintiff, but redact the contents of the forwarding message.

Communications between co-founders of a business are not shielded from production by the attorney-client privilege merely because one or both of them happen to be lawyers. Were that the case, defendants could conspire with impunity behind a cloak of privilege, shielding all of their relevant communications from future discovery, based on the happenstance that one or both was a lawyer. When two attorneys become business partners, their communications are not automatically privileged, even if they concern issues that could constitute legal advice if a third party were seeking advice from one of them. In *In re Baytown Nissan Inc.*, 451 S.W.3d 140 (Tex. App. 2014), two lawyers for entities entering a transaction had a conversation, which they later claimed was protected by attorney-client privilege for the sole reason that the discussants were both lawyers. The Court rejected the argument "that Phillips's status as an attorney—and not necessarily *their* attorney—is sufficient to attach attorney-client privilege," because it



> disregards the purpose of the privilege: to foster open communication between clients and their attorneys so that the attorneys can best represent their clients. It is the relationship with the client that confers the privilege. Accordingly, we reject [Party's] request to expand the attorney-client privilege to situations outside of an attorney-client relationship.

*Id.* at 146 (emphasis in original).  Here, co-Defendants and self-identified co-founders Endicott and Gross are alleged to have frozen Plaintiff out of the formation of CreditBridge and Petal. The communications whereby they conspired to do so are not protected by the attorney-client privilege simply because they are lawyers. Permitting Defendants to assert "attorney-client privilege" on the ground that they were lawyers would allow them to shield from discovery not only all communications about Plaintiff and "Project Kiwi", but also communications about critical issues in the case, such as the nature of the intellectual property they claim to have contributed to the company.  Likewise, when two co-defendants in a case discuss litigation, they cannot assert attorney-client privilege over the discussion on the basis that one or both is an attorney, even if they discuss legal issues, unless one is representing the other (or they are representing themselves *pro se* in the case, which Defendants state is not the case here).

**Unsubstantiated Claim that Defendant Gross Was "In-House" Counsel for CreditBridge Starting in 2015.**  Plaintiff first learned that Defendants were claiming that Jason Gross served as "in-house counsel" for Petal when Defendants served their second privilege log on June 28, 2021.  Defendants assert that Gross' in-house counsel role extended back as far as 2015 (prior to incorporation) and through 2018.  Plaintiff had not previously seen any reference to Gross serving as in-house counsel or holding the title of general counsel for CreditBridge or Petal prior to the designation in the June 28 transmittal letter for the log. Significantly, Gross did not refer to himself as "in-house counsel" in his email signature block or LinkedIn accounts for the period that Defendants now claim he served in that role, and we are not aware of any document or communication in Defendants' 90,000-page production that refers to Gross as "in-house counsel." Only following the July 20 meet and confer did Defendants produce documents in an attempt to substantiate their claim that Gross was "General Counsel" for Petal. One of those documents is undated and appears to be an incomplete draft of a Due Diligence Questionnaire for a bank. There is no context for the document or evidence it was ever actually completed or submitted. The other document does not even mention Gross.  These documents fall well short of demonstrating that Gross or Petal ever actually held Gross out as "General" or "in house" counsel to anyone prior to the delivery of the privilege log.

The party asserting attorney-client privilege bears the burden of establishing "those facts that are essential elements of" the claimed privilege or privileges. *See Safeco Ins. Co. of Am. v. M.E.S., Inc.*, 289 F.R.D. 41, 46 (E.D.N.Y.2011) (quoting *Bowne v. AmBase Corp.*, 150 F.R.D. 465, 470 (S.D.N.Y. 1993)); *see also A.I.A. Holdings, S.A. v. Lehman Bros., Inc.*, No. 97 Civ. 4978 (LMM), 2002 WL 31385824, at *6 (S.D.N.Y. Oct. 21, 2002) (withholding party must "submit evidence, by way of affidavit, deposition testimony or otherwise, establishing . . . the challenged elements of the applicable privilege or protection, with the ultimate burden of proof resting with the party asserting the privilege or protection") (citing *von Bulow v. von Bulow*, 811 F.2d 136, 144 (2d Cir.1987); *In re Grand Jury Subpoena Dated Jan. 4, 1984*, 750 F.2d 223, 224



(2d Cir.1984); *Bowne*, 150 F.R.D. at 470)). Conclusory and self-serving claims are insufficient. *See In re Grand Jury Subpoena*, 750 F.2d at 224-25.

Further, in order to rely upon attorney-client privilege, in-house counsel must be acting "in [their] legal, as opposed to business, capacity." *MSF Holding Ltd. v. Fiduciary Trust Co.*, 2005 WL 3338510, at *1 (S.D.N.Y. 2005) (no privilege where attorney "never alluded to a legal principle in the documents nor engaged in legal analysis. Instead, she collected facts just as any business executive would do . . . rel[ying] on her knowledge of commercial practice rather than her expertise in the law."); *Ovensen v. Mistubishi Heavy Industries of Am., Inc.*, 2009 WL 195853 (S.D.N.Y. 2009), at *3-4 (attorneys' "day-to-day involvement in their employers' affairs may blur the line between legal and nonlegal communications. The court therefore must proceed cautiously, recognizing that the application of the privilege risks creating an intolerably large zone of sanctuary since many corporations continuously consult attorneys.") (citing *First Chicago Int'l v. United Exch. Co. Ltd.*, 125 F.R.D. 55 (S.D.N.Y.1989)).

Defendants' claim in this case has all the indicia of an after-the-fact justification. Defendants now identify Jason Gross as the attorney, and CreditBridge and/or Petal as the client, to shield critical communications from production under the guise of attorney-client privilege.

**Last Entry on Log.** The last entry on the principal log is dated September 24, 2018. There is no explanation for the lack of "privileged" communications between Endicott and Gross after this lawsuit was filed; such communications need to be logged, since neither is litigation counsel in this matter. Although Defendants have represented that their productions are not complete, creating the possibility that additional privileged documents may be dated after September 2018, the absence of an such communications from a log containing 1100 entries raises serious questions about Defendants' logs, collections, and productions.[2]

**Author and E-Mail Addresses Missing.** There is no column on Defendants' current logs for "Author," and the logs fail to identify the author of documents that are not e-mails. *See, e.g.,* Ex. A at 22-23; Local Rule 26.2(a)(2)(A). Defendants' logs also lack email addresses for many senders and recipients. This information is necessary to identify individuals' affiliations and understand the capacity in which they are communicating. Many individuals in this case use multiple email addresses, including personal email accounts.

Respectfully submitted,

*/s/ Marilyn C. Kunstler*
Marilyn C. Kunstler

---

[2] There are also no text messages on the log, which suggests a larger problem with Defendants' collections and productions. The issue of collections and productions was noted in the June 28 Joint Letter to the Court (ECF 158), and reiterated in a letter to Defendants on July 6. Defendants responded by letter dated July 26 that claimed their document collections were "extensive" but failed to specify the devices and platforms that were searched or explain the absence of text messages.