# ALSTON & BIRD

90 Park Avenue
New York, NY 10016
212-210-9400 | Fax: 212-210-9444

**Joanna C. Hendon**   Direct Dial: **212-210-1244**   Email: **Joanna.hendon@alston.com**

September 7, 2021

**VIA ECF**
Hon. Barbara Moses
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: *Shih v. Petal Card, Inc., et al.*, No. 18-cv-5495 (S.D.N.Y.) (JFK) (BCM)

Dear Judge Moses:

We write on behalf of Defendants to request a pre-motion discovery conference concerning disputes relating to (1) subpoenas issued by Defendants to nonparties Tripsha, Inc. ("Tripsha"), Radiant Lifestyle LLC ("Radiant"), and Kerry Botensten (collectively the "Third Parties") and (2) certain requests for production addressed to Plaintiff, which together seek evidence that will corroborate, or undermine, public statements Plaintiff has made, and continues to make, about her experience and success as a "tech" entrepreneur in order to position herself in this case as a plausible co-venturer in Petal Card, Inc. The subpoenas are attached as Exs. A-C. The requests for production to which Plaintiff objects are Requests 2, 5-8, 12-22, and 25-29, included within Ex. D.

**The Relevant Facts.** Tripsha is a Delaware company purportedly founded by Plaintiff in 2019 that facilitates personalized group travel. Ms. Botensten is the "Head of Trips" at Tripsha. (*See* SHIH00011295.) Radiant is a New York limited liability corporation purportedly operated by Plaintiff in 2017 and 2018, which Plaintiff describes as "a curated selection of quality teas that can help introduce customers to the world of tea." (RADI00000004.) From at least as early as September 2019, and continuing until the present, Plaintiff has made statements to would-be partners, investors, and the media touting her accomplishments as a businesswoman, a "tech" CEO, and a repeat founder of start-ups, all calculated to burnish her image and bolster her claims in this lawsuit.

In a lengthy meet and confer, Defendants offered to withdraw all of the requested discovery if Plaintiff would stipulate not to introduce at trial evidence concerning her alleged record of accomplishments, from January 2017 forward, as a businesswoman, a CEO, and a repeat founder of companies. Defendants propounded the discovery at issue to ensure they are in a position to cross-examine Plaintiff on these matters at trial. As we advised her counsel, we believe Plaintiff's portrayal on these points to be dishonest, curated specifically for the litigation. Plaintiff declined to so stipulate, preferring to keep her options open at trial.

In an interview published just two months ago, Plaintiff compared Tripsha to the online behemoths, "Airbnb or Etsy," and described her life as a busy entrepreneur: "A big part of being CEO at a small startup is to check in regularly with the team and make sure they have what they need. I try to give clear priorities, provide resources and advice where I can, and then get out of the way . . . my mornings are typically structured around recurring calls and emails with team members, whereas afternoons are reserved for external-facing work like partnerships and marketing." (*Cassie Shih Fuses Tech and Group Travel With Tripsha's Creation*, The Flourishive, (June 15, 2021), at 4-5, https://www.flourishive.com/article/cassie-shih-fuses-tech-and-group-travel-with-tripshas-creation/ (attached as Ex. E).) Plaintiff continued, "[b]y the ten-year mark, I think Tripsha will have grown beyond what we now think of as leisure travel because of the changing nature of work and vacation. The two are increasingly blurring into one way we live our life and Tripsha is part of the largely digital toolset accelerating that process." (*Id*. at 5-6.)

In another interview, two weeks later, Plaintiff opined, "[H]ere I am, an entrepreneur working on a global travel platform[.]" (*Cassie Shih of Tripsha: 5 Things I Wish Someone Told Me Before I Began Leading My Company*, Authority Magazine, at 4 (June 28, 2021), https://medium.com/authority-magazine/cassie-shihof-tripsha-5-things-i-wish-someone-told-me-before-i-began-leading-my-company-a548aae163ad (attached as Ex. F).) "The hardest part was just not knowing where to start. If I go back and read the things I said and did a few years ago I'd probably shake my head at how clueless I sound":

> What I've learned though is that's actually a pretty common trait among entrepreneurs. Being willing to dive in and figure it out as you go means there will be times when you are the person in the room with the least knowledge and the most questions — and that's OK! I had a bunch of the typical startup hurdles — a co-founder that didn't work out, investors that ghosted — but I made my way through.
> . . .
> Tripsha's earliest angel investor Mike also backed Tripsha and me before we even had a product which was a big boost of confidence. I don't think it's possible to know where I or Tripsha would be without this invisible roster of support.

(*Id*. at 4-5 & 8.) Asked what she would do differently, Plaintiff told the reporter, "If I could go back to square one, I'd spend most of my time on [] demand validation and watching how potential customers behave before writing any code." (*Id.* at 9.)

On September 17, 2019, Plaintiff gave a presentation about Tripsha to a group of would-be entrepreneurs. After touting her credentials as a "former key investment analyst on $200M+ projects," she represented that Tripsha was earning revenue and covering its costs. When asked by an audience member whether the "cost of the trip" Plaintiff had just described "was included in the profit margin on [Tripsha's] side," Plaintiff responded that, while the industry average is to

2

charge a 20 percent commission, "we take a 10% commission . . . and that covers all of our operating costs, our credit card fees and things like that. . . so we're half that."[1]

Defendants believe, and intend to prove, these statements false – from the notion Plaintiff has written "code" for Tripsha, or supervised anyone else to do so, to the claim that Tripsha was or is now earning, or ever has earned, enough revenue to cover its costs, and virtually ever other assertion set forth above. Nothing in Plaintiff's disclosed education or employment history (a series of low-level short lived government policy jobs between 2015 and 2017) corroborates them, and while it is possible that Plaintiff became a repeat-founder of successful businesses when she moved to this country in 2018 (notwithstanding a global pandemic that has severely limited non-essential travel since March 2020), it is also a convenient persona for her to adopt for purposes of this lawsuit, and one Defendants are entitled to cross-examine thoroughly.

**Argument**. The third parties and Plaintiff contend that this discovery is precluded by the Court's May 4, 2021 order (ECF No. 150), duplicative of information already produced, unduly burdensome and designed to harass. These arguments are meritless. While the Court's May 4, 2021 order limited the scope of certain proposed discovery to evidence arising prior to February 15, 2019, the proffer that produced that ruling was that the evidence sought was relevant to Plaintiff's so-called *modus operandi*, that is, to "how she conducts herself when she genuinely believes she is starting a business with someone." (ECF No. 143 at 2; *see also* ECF No. 147 at 3-4 (disputing contention that the discovery is "relevant *modus operandi* evidence"); ECF No. 186-1 at 12:19-13:11 (characterizing the discovery as "modus operandi" or "pattern and practice"); *id.* at 14:24-15:3 (rejecting Defendants' proffer because "a person's, quote 'MO,' close quote, is also going to change over time in relation to what they've experienced in the past and what they've learned").)

But *modus operandi* or "pattern and practice" is not the basis on which Defendants seek this discovery. The evidence is relevant to claims at the heart of Plaintiff's lawsuit and to her credibility. Plaintiff is engaged in an effort to burnish an image as a successful "tech" founder and CEO for trial. This is not conjecture: Shortly after filing this action, Plaintiff communicated with a PR agent about a "potential plan of attack for the media plan around the lawsuit." (Ex. H.) Plaintiff was advised to engage in "[m]edia training and practice for interviews and statements" and "soft outreach to reporters and follow up 1-2 weeks before court date," as well as to "[g]et active on tech/women in tech community forums and support networks," and "review [] social [media] handles and remove any suspicious or controversial material." (*Id*.) Thus, in our correspondence transmitting the discovery requests to the third parties, we stated:

> We are aware of the prior litigation and the Court's rulings on the subject of "modus operandi" evidence. The enclosed discovery is sought on different grounds. Among other things, the discovery is necessary to impeach the statements Ms. Shih has made—and continues to make—to would-be partners, investors, and the media touting her accomplishments as a businesswoman, a CEO, and a repeat founder of start-up ventures, all calculated to bolster the central claims in this lawsuit and

---

[1] Neither Plaintiff nor Tripsha has produced the slides Plaintiff used at this meeting, or any other information about it. Defendants developed this evidence on their own. *See, e.g.,* Ex. G (slide from Ms. Shih's deck stating she was a "key investment analyst on $200M+ projects").

3

portray her as a plausible co-venturer in Petal, Inc.  *See, e.g.*, *City of N.Y. v. Grp. Health Inc.*, 2009 U.S. Dist. LEXIS 149594 (May 6, 2009) (Sullivan, J.) at *6-7 (reversing Magistrate Judge's decision denying discovery of evidence that "would be relevant, at a minimum, to impeaching the assertions of Plaintiff and its witnesses").

(July 26, 2021 Ltr. from J. Hendon to C. Vogel.)

Such evidence is relevant, discoverable, and may be used at trial. *See, e.g., Altman v. New Pub. Sch. Dist.*, 2017 U.S. Dist. LEXIS 2515, at *20-21 (S.D.N.Y. Jan. 6, 2017) (where plaintiff is "the crucial witness to her claim," the "question of h[er] credibility is essential to the case" and "[h]er potential propensity for falsehoods is certainly relevant to her credibility") (citing *Vichare v. AMBAC Inc.*, 106 F.3d 457, 468 (2d Cir. 1996)); *Grp. Health Inc.*, 2009 U.S. Dist LEXIS 149594, at *6-7. And Courts routinely authorize discovery, or additional discovery, based on newly discovered facts, as is the case here with Plaintiff's June 2021 press interviews. *See, e.g., Levi Strauss & Co. v. Golden Trade, S.r.L*, 1992 U.S. Dist. LEXIS 11088, at *5-6 (S.D.N.Y. July 24, 1992) (reopening discovery "to address newly discovered leads" that plaintiff learned about after close of discovery); *Seth Co. v. U.S.*, 2003 U.S. Dist. LEXIS 7982, at *8 (D. Conn. Mar. 3, 2003) (rejecting argument that second deposition of a witness was "harass[ment]" where party "has identified specific areas of inquiry which it did not cover (or did not cover in sufficient depth, as it did not know of)" the newly discovered facts); *Keck v. Union Bank of Switz.*, 1997 U.S. Dist. LEXIS 10578, at *4 (S.D.N.Y. July 22, 1997) (additional discovery "is often permitted[] where new information comes to light triggering questions that the discovering party would not have thought to ask") (citations omitted).

The discovery at issue is narrowly drawn (in part, quoting directly from Ms. Shih's interviews) to develop evidence that will either corroborate or undercut claims she has chosen to make about herself and her ventures, including whether either Tripsha or Radiant was, or is, successful – or even operational (*i.e*., that either generated revenue or profits, that any investor has committed funds to either, and that either business has cash flow, or costs that are now being covered by founders or investors). *See Trustees of the Sickness & Accident Fund v. Philips Winson, Inc.*, 2000 U.S. Dist. LEXIS 3624, at *7 (S.D.N.Y. Jan. 26, 2000) (granting a motion to compel, in part on the basis that the document requests were "narrowly tailored"); *Wexler v. Allegion (UK) Ltd.*, 2020 U.S. Dist. LEXIS 162648, at *34 (S.D.N.Y. Aug. 25, 2020) ("[B]ecause these requests are narrow, they are not unduly burdensome or prejudicial to Plaintiffs" and denying motion for protective order).

Finally, it is untrue that the third parties or Plaintiff have already produced the type of information now sought. In fact, Plaintiff, her companies, and her apparent business partner (Ms. Botensen) have produced none of the information sought by the subpoenas or the contested requests for production, which is why Defendants have taken the trouble to propound them. *See Universitas Educ. LLC v. Nova Grp., Inv*., 2013 U.S. Dist. LEXIS 1720, at *25 (S.D.N.Y Jan 4, 2013) (the "accusation that [a] document subpoena is designed to harass is undercut by the fact that [plaintiff] has been persistently rebuffed in its discovery efforts by [defendant] and individuals and entities associated with it").

Respectfully submitted,

/s/ *Joanna C. Hendon*

Joanna C. Hendon