# DELBELLO DONNELLAN WEINGARTEN WISE & WIEDERKEHR, LLP

**Peter S. Dawson, Esq.**
(914) 681-0200 x207
psd@ddw-law.com

COUNSELLORS AT LAW

THE GATEWAY BUILDING
ONE NORTH LEXINGTON AVENUE
WHITE PLAINS, NEW YORK 10601
(914) 681-0200
FACSIMILE (914) 684-0288

**Connecticut Office**
1111 SUMMER STREET
STAMFORD, CT 06905
(203) 298-0000

September 20, 2021

**VIA ECF**
Hon. Barbara Moses
United States Magistrate Judge
Southern District of New York
500 Pearl Street, Room 740
New York, New York 10007

Re: *Shih v. Petal Card, Inc., et al.*, No. 18-CV-5495 (SDNY) (JFK)(BCM)

Dear Judge Moses:

We represent Plaintiff Cassandra Shih in the above-referenced action. We write pursuant to Local Rule 37.2 and Your Honor's Individual Practices Rule 2.b to request a pre-motion conference with the Court and an order compelling Defendants to produce (1) text messages and documents sourced from social media accounts; (2) documents sufficient to identify the devices Defendants Andrew Endicott and Jason Gross used to communicate ("the Device RFPs"); and (3) documents sourced from Mr. Endicott's Andrew@creditbridge.com email domain.

### 1. Plaintiff's Attempts to Meet and Confer, and Defendants' Stonewalling.

Defendants' entire document production contains only *one* text message exchange and *one* document containing Facebook message communications, which was not actually sourced from Facebook but produced as a Microsoft Word document. An analysis of the metadata associated with Defendants' production suggests that no produced documents – *none* – are sourced from mobile devices or social media accounts that Defendants used, such as Facebook, LinkedIn, Twitter, or Slack. In addition, the metadata suggests that Defendants did not produce any documents sourced from Box.com, a website their own attorneys called a "repository" of relevant information, or from Andrew@CreditBridge.com, an email address Endicott used in 2015 and 2016, the period when Defendants cut Plaintiff out of the business she started with Endicott.

Plaintiff has made extensive good faith attempts to meet and confer with Defendants on these issues. To put it plainly, the Defendants have refused to be transparent about their device usage, collections and preservation efforts. On March 10, 2021, Plaintiff wrote to Defendants' counsel:

> [I]n the same manner that we identified the devices, email accounts, and social media accounts that Plaintiff collected against in response to your requests, we

> ask that you confirm for us . . . the devices, email and social media accounts collected against for Jason Gross and Andrew Endicott in connection with the production of their documents and communications.

Ex. A at 5 (Ltr. from P. Dawson, dated 3/10/21). Defendants' response, dated March 22, 2021, stated generically that Defendants "collected past and current personal and professional laptops; past and current cellular phones; personal and professional email accounts," but failed to identify the specific devices or email accounts. *See* Ex. B at 2 (Ltr. from V. Hletko, dated 3/22/21). This echoed their approach in earlier responses to interrogatories.[1] Following a meet and confer on March 23 during which Defendants refused to provide more information, Plaintiff served the Device RFPs on Endicott and Gross. The Device RFPs called for the production of

> Documents sufficient to show Your usage of all devices, including cell phones, tablets, computers, or any other hardware, that could be used to communicate with others from 2013 to the present.

*See* Ex. C at 10 (Endicott, Request 40) & Ex. D at 9 (Gross, Request 27) (dated 4/7/21). Defendants are refusing to produce documents in response to the Device RFPs. *See* Ex. E at 34 (Endicott Responses) & Ex. F at 24-25 (Gross Responses) (dated 5/7/21) (excerpts). After Plaintiff raised the Device RFPs at a June 15, 2021 meet and confer, Defendants stated in a June 21 letter that they "will not agree to produce additional documents in response to these new RFPs." Ex. G at 4 (Ltr. from J. Matz and V. Hletko, dated 6/21/21).[2]

Following the June 30, 2021 status conference, Plaintiff wrote to Defendants' new counsel on July 6 seeking a further meet and confer and clarification on these issues. *See* Ex. H (Ltr. from P. Dawson, dated 7/6/21). Defendants responded on July 26, again generically and without providing the information requested:

> Defendants have complied with their obligations to collect documents and conduct a reasonable search . . . . In fact, Defendants' collection of documents was comprehensive and extensive, covering myriad devices and platforms. Defendants have produced responsive documents to the extent that they exist.

---

[1] In response to Plaintiff's February 2019 interrogatories seeking all locations of electronic or hard copy documents, Defendants Endicott and Gross listed "current" locations, including then-current (as of 2019) company and personal Gmail, Slack, iPhone, laptop, social media (Facebook, LinkedIn, and Twitter), and Skype accounts. But for the period beginning October 2014, they listed, generically, prior cell phones, prior laptops, a DropBox account, Gmail, laptops, and voicemail on prior employers' systems. *See* Ex. M at 35-39 (Gross Interrog. Responses) & Ex. N at 35-38, 40-41 (Endicott Interrog. Responses) (dated 3/22/19) (excerpts). Their responses for the earlier period are not only vague, but obviously incomplete, since they omit Slack accounts, social media accounts like Facebook, and Skype accounts, among other locations. When it subsequently became apparent that Defendants' document productions did not include communications sourced from devices and social media accounts, Plaintiff served the Device RFPs.

[2] The issue was further referenced in the June 28, 2021 Joint Letter to the Court: "The parties are still meeting and conferring about deficiencies in their respective collections and preservation efforts but do not believe those issues are ripe for judicial resolution." Dkt. 158 at 1.

Ex. I (Ltr. from K. Barnaby, dated 7/26/21). Defendants reiterated their position in a telephonic meet and confer on August 10, followed by an email dated August 13 that again confirmed Defendants would not respond to the Device RFPs. *See* Ex. J (Email from K. Barnaby, dated 8/13/21). Defendants have never explained why their document production does not contain text messages or communications sourced from social media.[3]

### 2. Defendants Should Be Ordered to Produce Responsive Text Messages and Social Media Communications.

The Federal Rules of Civil Procedure require Defendants to produce electronically stored information in their "possession, custody, or control," Fed. R. Civ. P. 34(a)(1), regarding "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). A party is required to produce responsive documents that he or she has "the right, authority, or practical ability to obtain." *Gruss v. Zwirn*, 296 F.R.D. 224, 230 (S.D.N.Y. 2013) (quoting *Asset Value Fund Ltd. P'ship v. Care Grp., Inc.,* 1997 WL 706320, at *9 (S.D.N.Y. Nov. 12, 1997)).

The only text message produced by Defendants is a 2015 text chain referring to Plaintiff, between Endicott and a friend named Anya Zhukova. *See* Ex. K. Notably, all nine messages in that conversation are labeled "DELETED." There are no texts between or among Endicott, Gross, CreditBridge's early data scientist Berk Ustun, or any of CreditBridge's other early purported "co-founders." Nor are there any texts between Endicott and his girlfriend at the time, Yulia Fradkin, who assisted Endicott with CreditBridge in 2015. *See* Second Amended Complaint ("SAC"), Dkt. No. 93 ¶¶ 116, 129, 131, 144. When Plaintiff asked Ms. Fradkin's attorney why text messages were not in her production, the attorney referred Plaintiff to Endicott's production. Yet, no texts appear there either. It is unlikely that text communications do not exist, and Plaintiff's concerns are only heightened by our analysis of the production metadata. The folder structure metadata for Defendants' production does not identify any mobile device as a source of produced documents, and we have not identified any "messaging" file types within the production. The absence of any documents sourced from mobile devices, coupled with Defendants' stonewalling on the issue of devices, suggests either that Defendants failed to preserve or collect discoverable information from these devices, or that Defendants have intentionally withheld messaging files.

Plaintiff has similar concerns about the lack of social media communications in Defendants' productions. We know that Endicott used Facebook messenger because he communicated extensively with Plaintiff over Facebook messenger in 2015 (*see* SAC, Dkt. 93 ¶¶ 5, 24, 27, 42, 43, 45, 50, 52, 66), yet Defendants' productions contain no documents collected from Facebook. In addition, Endicott, Gross, and others appear to have routinely utilized social media platforms such as Slack for communications about CreditBridge during the relevant time period. Documents produced by Defendants dated between January 2016 and January 2017 include email communications between Gross and Endicott that refer to related messages between the two on Slack, and from Gross to Petal employees requesting that any questions be submitted via Slack. Plaintiff is particularly concerned about the complete absence of Slack

---

[3] In contrast to Defendants' lack of transparency, Plaintiff has been completely forthcoming about her collection and preservation efforts in responding to identical requests from Defendants. *See, e.g.*, Ex. O at 7-12 (Pl's Resp. to Def's. First Interrog., dated 3/22/19)(excerpts); Ex. P at 3-4 (Ltr. from P. Dawson, dated 2/4/2021); Ex. Q at 3-4 (Pl's. Supp. Responses to Def's. Second Interrogatories, dated 3/26/21).

messages and items stored on Box.com because email communications show that Endicott and Gross used Slack to communicate about CreditBridge in the relevant time period, and because Defendants' prior counsel had identified Box.com as among the "repositories" of relevant information. *See* Ex. L at 1 (Ltr. from J. Matz, dated 7/8/19).

Defendants should be ordered to produce responsive text messages and social media communications sourced directly from their mobile devices and social media accounts, as well as documents sourced from Box.com. *Thomas v. City of New York*, 336 F.R.D. 1, 4–5 (E.D.N.Y 2020) (granting motion to compel electronic discovery, including text messages and social media chat messages from five distinct custodians).

  3. **Endicott and Gross Should Be Compelled to Respond to the Device RFPs.**

The Device RFPs seek documents sufficient to identify all devices used by the Defendants that contain responsive material. Defendants' failure to identify during the meet-and-confer process the specific devices that Endicott used to communicate is extremely troubling, and it interferes with Plaintiff's ability to assess whether the devices containing relevant evidence were preserved. A party is under an obligation to preserve relevant evidence when it "reasonably anticipate[s] litigation." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003). Here, Plaintiff wrote to Gross and Endicott on February 16, 2016, asserting her claims (SAC, Dkt. 93 ¶ 170), and Defendants' counsel acknowledged that communication to be "notice of a claim" in a July 20, 2021 meet and confer about Defendants' privilege logs. Defendants are now withholding their communications about that email based on attorney-client privilege. *See* Dkt. 177-1 at 2 (excerpts from Def. Revised Privilege Log, dated 7/23/21). Having been placed on notice of Plaintiff's claim at least as of early 2016, Endicott and Gross, Harvard-educated attorneys, were under a duty to preserve all devices containing relevant information *in existence at that time* and going forward. Their failure now to identify those devices in light of the significant production deficiencies described above is unacceptable.

  4. **Defendants Should Be Directed to Produce Documents Sourced from the Andrew@creditbridge.com Email Account.**

According to the metadata for Defendants' productions, Defendants have to date produced over 1,800 messages sourced from Jason@creditbridge.com, but *none* sourced from Andrew@creditbdridge.com. Endicott used that email address extensively during the relevant time period, including to communicate with Plaintiff. Defendants have claimed that the Creditbridge.com domain was merged into Petal's Google Drive "G Suite" system, and all material was preserved in connection with that process, but they have not explained why there are no emails sourced from Andrew@creditbridge.com, when there are numerous emails sourced from Jason@creditbridge.com. Defendants should be compelled to produce communications sourced directly from that domain to ensure that no responsive documents have been withheld.

Respectfully submitted,
/s/ *Peter S. Dawson*
Peter S. Dawson

cc:  All counsel via ECF

4