**ALSTON & BIRD**

The Atlantic Building
950 F Street, NW
Washington, DC 20004-1404
202-239-3300 | Fax: 202-239-3333

**Kelley Connolly Barnaby**     Direct Dial: **202-239-3687**     Email: **kelley.barnaby@alston.com**

September 28, 2021

**VIA ECF**
Honorable Barbara Moses
United States District Court, Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   Shih v. Petal Card, Inc., et al., No. 1:18-cv-05495-JFK-BCM (S.D.N.Y.)

Dear Judge Moses:

We write on behalf of Defendants, after meeting and conferring with Plaintiff multiple times, to request a pre-motion discovery conference concerning Defendants' request to quash subpoenas issued by Plaintiff to non-parties Ernst & Young LLP ("E&Y") and Deloitte & Touche LLP ("Deloitte"), respectively Defendant Petal Card, Inc.'s ("Petal") current and former independent auditors. The subpoenas (attached as Exhibits A and B), which are directed at Defendants' information in the possession of its auditors, are grossly overbroad and implicate Petal's most sensitive proprietary information—including relating to Petal's and non-party WebBank's credit underwriting methodologies—as well as the information of Petal's individual employees and end-user members, none of which have any relevance to the claims or defenses at issue in this litigation. Plaintiff's contention that the requested information *may* be relevant to valuation and damages is belied by the breadth of her requests, and ignores that any requested valuation information is unnecessarily cumulative in light of the extraordinary amount of valuation material Defendants have already produced in this case.

**Relevant Background.** In April 2021, Plaintiff served the subpoenas, each of which includes twelve broad requests covering a more than 6-year period. In addition to material concerning this lawsuit and Plaintiff, the subpoenas seek an unfettered production of all documents related to Defendants in any way, regardless of subject matter or relevance to this litigation, including "[a]ll documents provided by or on behalf of Petal . . . in connection with any audit or other [engagement]," "[a]ll . . . communications with or involving Petal," and "[a]ll products or advice of any kind provided . . . to Petal." *See* Exs. A, B at Nos. 5, 6, 12. Plaintiff's position, as conveyed during the meet-and-confer process, is that the requested discovery is relevant primarily because it may cast light on documents that Defendants have *already* produced—such as audited financial statements—and, therefore, pertain to Petal's valuation and, by further extension, damages.

Implicit in Plaintiff's theory is the admission that she has already received, through party discovery, a vast amount of information related to the valuation of Petal. The Court recognized as much the last time it addressed Plaintiff's request for material concerning valuation, observing that

Alston & Bird LLP                                                                                                                                 www.alston.com

Atlanta | Beijing | Brussels | Charlotte | Dallas | Fort Worth | London | Los Angeles | New York | Raleigh | San Francisco | Silicon Valley | Washington, D.C.

there "is a sort of cumulativeness problem" in that Plaintiff has "an enormous amount of information already and will be getting more documents concerning [Petal's valuation]." (6/30/2021 H'rg Tr. at 38:21-39:8.) Indeed, since the subpoenas were served, Defendants have produced materials relating to "the company's current valuation," "documents showing the actual value that sophisticated investors recently paid for shares in arm's-length transactions," and the "documents relied upon by those investors." (ECF No. 158 at 2.) Defendants have likewise provided "audited financials, models, [and] projections," plus myriad other documents. (6/30/2021 H'rg Tr. at 42:13-24.) Specific examples include: (i) 409A valuation reports prepared by independent third parties; (ii) audited year-end financial statements for 2017-2020; (iii) monthly financials; (iv) tax returns; (v) final closing documents from Petal's Series Seed, A, B, C, and C-3 rounds; (vi) financial models and pitch decks provided to the lead investors from Petal's Series Seed, A, B, and C rounds; (vii) financial model and pitch deck provided to one of the largest participants in the Series C-3 round; (viii) financial model and pitch deck provided to an additional Series C round investor identified by Plaintiff; (ix) financial model and pitch deck provided to an additional Series C-3 round investor identified by Plaintiff; and (x) additional valuation models and documents regarding specified debt facilities that Plaintiff argued to the Court in June 2021 were relevant to the issue of valuation.[1]

The subpoenas, however, seek information that goes far beyond valuation. In requesting all information and communications exchanged between Defendants and the auditors, as well as the auditors' working papers incorporating such information, Plaintiff seeks wholly irrelevant material, including internal policies and procedures, office leasing and insurance information, bank statements, and other highly sensitive proprietary information. For example, the materials provided to the auditors include the Petal Card program Credit Policy, which memorializes proprietary information relating to Petal's and WebBank's[2] credit underwriting methodologies, including, *inter alia*, (i) methods of screening for and assessing potential fraud; (ii) details of the approval and credit underwriting process; and (iii) specific criteria for determining credit lines and pricing for the Petal Card program. Such information is not only irrelevant, but is highly sensitive, proprietary, and is only disclosed in very limited circumstances (such as to independent auditors in connection with compliance reviews). Wider disclosure, particularly to an adverse party, risks substantial harm to Defendants' core business. Moreover, Petal has provided material to its auditors that pertains both to end-user Petal Card members (such as credit card statements) and individual employees (such as salary information, payslips, and employment agreements). Such material is entirely unrelated to *any* issue in this litigation, let alone Plaintiff's proffered theory of relevance.

**Legal Standard.** "[O]n a motion to quash a subpoena, the burden is on the party issuing the subpoena to 'demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings.'" *Corbett v. eHome Credit Corp.*, 2010 U.S. Dist. LEXIS 77712, at *8 (E.D.N.Y. Aug. 2, 2010) (citation omitted) (collecting cases); *see also Manolis v. Brecher*, 2013 U.S. Dist. LEXIS 112686, at *6 (S.D.N.Y. Aug. 9, 2013) (similar). If the issuing

---

[1] Defendants have produced more than 21,000 documents (totaling more than 132,000 pages), including more than 1,400 documents that hit on one or both of "(financial* w/2 (model* or project*))" or "valuation*".

[2] WebBank is the issuer of the Petal Card products and the lender under the program.

party meets that threshold burden, the court "weigh[s] the relevance or probative value of the documents being sought against the privacy interests [] asserted." *Solow v. Conseco, Inc.*, 2008 U.S. Dist. LEXIS 4277, at *12 (S.D.N.Y. Jan. 18, 2008). The court has broad discretion to quash or modify a subpoena, including where it requires the disclosure of "a trade secret or other confidential research, development, or commercial information," Fed. R. Civ. P. 45(d)(3)(B)(i), and "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter" absent an exception or waiver. Fed. R. Civ. P. 45(d)(3)(A)(iii). Likewise, "the court must limit the frequency or extent of discovery" if "the discovery sought is unreasonably cumulative or duplicative." Fed. R. Civ. P. 26(b)(2)(C)(i); *see also Haber v. ASN 50th St., LLC*, 272 F.R.D. 377, 382 (S.D.N.Y. 2011) ("[T]he scope of discovery . . . is not boundless, and a court may place limits on discovery demands that are 'unreasonably cumulative or duplicative.'") (citation omitted); *see also* Fed. R. Civ. P. 26(b)(1) (discovery must be "proportional to the needs of the case").

Defendants may challenge the subpoenas because "it is well-established that a party with a real interest in the documents has standing to raise objections to their production." *Solow*, 2008 U.S. Dist. LEXIS 4277, at *8 (privacy interest confers standing). A party's "commercial stake in the documents at issue [plainly] constitutes such an interest." *Blue Angel Films, Ltd. v. First Look Studios, Inc.*, 2011 U.S. Dist. LEXIS 23696, at *2-3 (S.D.N.Y. Mar. 9, 2011) (collecting cases). As noted above, the subpoenas implicate a variety of Defendants' commercial and financial information, including proprietary information that the Court has already noted is extremely important to Defendants. *See* 6/30/2021 H'rg Tr. at 34:13-16 ("Well, [Defendants'] concern is trade secrets; they don't want [Plaintiff] to see the . . . formula for Coke."). Moreover, during the meet-and-confer process, Plaintiff's counsel expressed an interest in obtaining information related to legal contingencies, which implicates protected work product. *See, e.g.*, *In re Weatherford Int'l Sec. Litig.*, 2013 U.S. Dist. LEXIS 170559, at *20 (S.D.N.Y. Nov. 5, 2013) ("In this circuit, disclosure to an outside auditor does not generally waive work product protection.") (collecting cases).[3]

**The Subpoenas Seek Defendants' Proprietary Information That Is Irrelevant or Cumulative.** Notwithstanding Plaintiff's asserted basis for relevance, only one of the twelve requests (Request No. 8) seeks information concerning Petal's valuation. The remaining requests—which Defendants understand have not been narrowed—broadly encompass, *inter alia*, engagement letters and billing information, drafts, all documents provided by Petal, all communications involving Petal, and "[a]ll products or advice of any kind provided . . . to Petal." (Exs. A, B.) One court in this Circuit recently rejected as "breathtaking in its scope" a subpoena that sought from a party's accountant substantially similar information, including "all of the documents, for a six-year period, reflecting 'any accounting services' provided to Defendants . . .; all ledgers, journals, and [P&L] statements; . . . all communications with any Defendant; and all bills for any accounting

---

[3] Because Petal partners with WebBank, there is also a possibility that information from WebBank that may be protected from disclosure pursuant to the qualified bank examination privilege, such as documents concerning FDIC examinations, may be included in information provided to the auditors. *See Principe v. Crossland Sav., FSB*, 149 F.R.D. 444, 447 (E.D.N.Y. 1993) ("[C]ourts have recognized a privilege for materials relating to bank examination reports.") (collecting cases). This privilege "belongs to the regulatory authority" and is therefore not Defendants' or the auditors' to waive. *Sharkey v. J.P. Morgan Chase & Co.*, 2013 U.S. Dist. LEXIS 74795, at *2 (S.D.N.Y. May 20, 2013) (citation omitted).

services." *Allstate Ins. Co. v. All Cty., LLC*, 2020 U.S. Dist. LEXIS 176297, at *7-8 (E.D.N.Y. Sept. 22, 2020). The court reasoned that "there [was] no document related to [defendant] that would escape production" and that "[a]sking an accountant to turn over every document related to a client is nothing more than a fishing expedition . . . ." *Id.* at *8 (collecting cases).

The same is true here. Plaintiff does not allege accounting fraud or misstated financials; rather, she asserts causes of action such as breach of contract and misappropriation of business idea predicated on alleged events that took place years before Petal ever retained Deloitte or E&Y. She has already received (among voluminous other financial and valuation information) Petal's audited financial statements—the accuracy of which is not at issue. Courts have limited discovery of auditor work papers based on lack of relevance, even in situations where (unlike here) fraud by the defendant company was alleged. *See, e.g.*, *Nicholas v. Poughkeepsie Sav. Bank/FSB*, 1991 U.S. Dist. LEXIS 8083, at *4, 7 (S.D.N.Y. June 13, 1991) (modifying subpoena in securities fraud case to exclude auditor's internal work papers where there "seem[ed] to be no relationship between the internal work papers and [plaintiff's] claims against [defendant]"). So too with Plaintiff's other grossly overbroad requests. *See, e.g.*, *Mackey v. IDT Energy, Inc.*, 2019 U.S. Dist. LEXIS 77101, at *15-16 (S.D.N.Y. May 7, 2019) (quashing subpoena requests for "all documents and communications . . . concerning [defendant]" and "all communications . . . regarding [the] litigation" because they "overwhelmingly seek clearly irrelevant materials"). Even with respect to Request No. 8, Plaintiff broadly seeks "[d]ocuments and communications concerning any Valuation performed for Petal or CreditBridge, including but not limited to [more than 25 enumerated categories of documents]." But documents concerning "any Valuation" are not relevant to Plaintiff's theory of damages, which seems to be based on the *current* valuation, and even Plaintiff's proffered basis provides no support for her requests stretching back to January 1, 2015. Indeed, it is entirely unclear why documents in the possession of Deloitte, which last audited Petal's financials for the year-ended December 31, 2018, would bear on Petal's valuation in 2021.

Even if any of the valuation-related discovery were relevant (it is not), it would nonetheless be unreasonably cumulative of discovery that has already been produced. *See* Fed. R. Civ. P. 26(b)(1)(C); *Haber*, 272 F.R.D. at 382 (quashing subpoena as duplicative of party discovery). As set forth above, Defendants have already produced voluminous—and recent—information pertaining to Petal's valuation that comprises "more than any ordinary investor would obtain." (6/30/2021 H'rg Tr. at 47:23-48:5.) Plaintiff has herself acknowledged to this Court that she is "not entitled to every scrap of paper" relating to valuation of Petal's business, (*id*. at 39:8-18), and her effort to end-run the parties' negotiated scope of discovery and the Court's ordered scope should be rejected, particularly given the lack of probative value and sensitive nature of the documents implicated. *See Burns v. Bank of Am.*, 2007 U.S. Dist. LEXIS 40037, at *46 (S.D.N.Y. June 4, 2007) ("[S]ubpoenas under Rule 45 are clearly not meant to provide an end-run around the regular discovery process under Rules 26 and 34."). In light of the substantial amount of information that has already been produced concerning valuation, the irrelevance of the remaining requests, and the privacy interests at stake, the subpoenas should be quashed. *See In re Flag Telecom Hldgs.,* 2006 U.S. Dist. LEXIS 69140, at *6 (S.D.N.Y. Sept. 13, 2006) (granting party's motion to quash subpoena served on KPMG that sought irrelevant documents where party had "already voluntarily produced over 4,000 pages of publicly filed documents . . . as well as other [relevant financial] documents").

Respectfully submitted,

/s/ Kelley C. Barnaby

Kelley C. Barnaby
*Admitted Pro Hac Vice*

Copies to: All counsel of record via ECF