

<div style="text-align:right">October 1, 2021</div>

**BY ECF**
The Honorable Barbara Moses
United States Magistrate Judge
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 740
New York, NY 10007

      Re:  *Shih v. Petal Card, Inc., et al.*, 18-CV-5495 (JFK) (BCM)

Dear Judge Moses:

      We represent Plaintiff Cassandra Shih in the above-referenced action. We write on behalf of all parties to provide a joint status update pursuant to Your Honor's Order of July 6, 2021 (ECF 165) in advance of the conference before Your Honor that is scheduled for October 6, 2021.

      *Joint Report.* Pursuant to the Court's July 1, 2021 Order (ECF 160), Defendants produced documents on July 21, 2021.  Defendants served three additional sets of document requests on July 14, July 23, and August 3, 2021, to which Plaintiff timely responded.  In accordance with the Court's July 1 and July 6, 2021 Orders (ECF 160, 165) and agreements between the parties reached before the June 30 status conference, Defendants produced documents on August 31, 2021. On July 23 and July 26, 2021, Defendants served Notices of Intent to Serve subpoenas on six nonparties; a motion to quash the subpoena to one nonparty, Republic National Bank, was granted by the Court on August 20, 2021 (ECF 197). The parties exchanged revised and supplemental privilege logs in accordance with the Court's July 6, 2021 Order. Following a hearing on August 17, 2021 regarding privilege disputes, the parties submitted documents to the Court for in camera review pursuant to the Court's Orders dated August 18 and August 20, 2021 (ECF 193, 196).

      Since the June 30, 2021 conference, the parties have raised with the Court four discovery disputes (ECF 189, 204, 211, 216), all but one of which (ECF 216) are fully submitted.

      The parties have not had settlement discussions since prior to the June 30 status conference.

**A.  Discovery Disputes:  Issues Identified by Plaintiff**

      *Failure to produce General Ledger pursuant to prior commitments:* Plaintiff's original Requests for Production ("RFPs") contained requests for Petal's general ledger and all related reports and work papers. Following a series of meet and confer letters and discussions, Defendants' counsel committed to producing Petal's general ledger in a July 8, 2019 letter. Plaintiff relied upon that commitment and did not move to compel, but when Defendants made their first purported substantial completion production on May 28, 2021, it only included a limited, redacted general ledger covering the period from January 2016 through March 2019 (PETAL000121879) that did not provide current information. Plaintiff objected, and the general ledger was the subject of another series of meet and confer discussions in late June 2021 in advance of the June 30 status



conference. Plaintiff had intended to raise Defendants' failure to produce the complete general ledger with the Court at that conference, but in an attempt to narrow the issues requiring court intervention, a compromise agreement was reached pursuant to which Defendants would produce the general ledger through May 2021. The compromise was confirmed in writing in a June 26 letter from Defendants' counsel. Plaintiff again relied upon this second commitment and did not raise the general ledger at the June 30 conference, but without explanation or notice, Defendants' August 31 production did not contain the general ledger, as promised. When Plaintiff inquired about this deficiency, Defendants' counsel stated they would not produce the general ledger and called it "irrelevant," notwithstanding Defendants' two prior commitments to produce it. The partial general ledger that has been produced contains relevant information concerning the financial operations of Petal, including numerous payments to Endicott and Gross, previously undisclosed loans involving family members of Defendants, and expenses that reveal that Petal negotiated with banks and lenders not previously known to Plaintiff; Defendants should not be permitted to flout their obligation to negotiate discovery disputes in good faith. Defendants should be ordered to produce the entire unredacted general ledger, to the current date, without date restriction, as originally requested.

***Failure to produce Debt Financing Transactions documents, as ordered by the Court***: At the June 30, 2021 status conference, as memorialized in the Court's July 1, 2021 Order (ECF 160), Defendants were directed to produce *all* documents regarding (1) a $34 million April 2018 debt facility with Jefferies and Silicon Valley Bank ("SVB"); (2) a $4 million May 2018 debt facility with SVB; and (3) a $126 million January 2021 debt facility with Trinity Capital and SVB.[1] The corresponding production is so minimal that it cannot plausibly constitute *all* documents regarding these transactions. For the 2018 $30 million debt facility, Defendants claim to have produced five documents: a summary slide deck, a presentation titled "Scenarios and Cash Position," and various agreements, but no communications with any of the lenders and no transmittal emails or letters identifying the documents that were requested or submitted for underwriting or valuation purposes. For the 2018 $4 million debt facility, Defendants point to just three documents – an investor slide deck, a financial model, and a loan security agreement, but again have not produced any correspondence or communications concerning the debt facility. And for the $126 million debt facility with Trinity Capital and SVB earlier this year, Defendants produced just <u>one</u> document – an April 2020 financial model – despite the Court's Order that Defendants produce all documents regarding that transaction. It is implausible that these transactions were consummated on the basis of such minimal financial documentation and, with no produced communications, Plaintiff has no context or way to verify what was shared and when.

***Other Deficiencies in Defendants' Production****:* Similar gaps appear in Defendants' production pursuant to compromises reached in advance of the June 30 conference, such as documents provided to certain investors, and documents provided to valuation consultants. Plaintiff relied upon these agreements in withdrawing nonparty subpoenas and not raising production deficiencies at the last status conference. Nor have Defendants produced a plethora of other agreed-upon documents, as outlined in letters we have sent to Defendants' counsel. (A list of the missing documents is too extensive to fit within the constraints of this joint report, but

---

[1] According to Defendants, what prior counsel referred to as a "$34 million April 2018 debt facility" is actually a $30 million debt facility with Jefferies and a $4 million debt facility with SVB, which is the transaction that had been referred to as the "$4 million May 2018 debt facility."

2

Case 1:18-cv-05495-JFK-BCM   Document 220   Filed 10/01/21   Page 3 of 4



Plaintiff is prepared to provide the list for reference at the October 6 conference.) Plaintiff has serious concerns about Defendants' collection and production efforts generally, as reflected in those letters and the pending motion to compel (ECF 211). Despite generous substantial compliance dates (60 days after the June 30 conference), Defendants have repeatedly failed to produce documents on a rolling basis; and relevant, responsive documents that should have been in their earliest productions, such as documents concerning the re-branding of CreditBridge to Petal in mid-2016, are appearing for the first time in the August 31 production. Defendants should be directed to promptly cure all deficiencies so that depositions can proceed.

*Response to Defendants' Issue:* The redactions in five of the documents to which Defendants refer are not "unexplained." The documents are labeled "SENSITIVE PERSONAL/HEALTH/FINANCIAL." Plaintiff explained seven months ago that a limited number of documents would be redacted to protect sensitive communications with a romantic partner and personal health issues that had nothing to do with the subject matter of the litigation and Defendants' counsel responded in a meet and confer that "we aren't looking for your client's sexts." Defendants' reliance on the *Coventry* case is not on point, as it involved redactions of Board minutes on the sole ground that the information was nonresponsive. The case law supports Plaintiff's redactions. *See, e.g., Velez v. City of New York*, 2010 WL 2265443 at *5 (E.D.N.Y. June 2, 2010) (approving redaction of "sensitive personal information" such as home address, religion, medical history). Plaintiff is in the process of reviewing the remaining documents.

### B. Discovery Disputes:  Issues Identified by Defendants

**Issues Raised by Plaintiff:** Days before the October 6 conference, and a month after Defendants' production, Plaintiff purports to raise for the first time alleged defects with Defendants' document productions.  Pursuant to the Court's Order (ECF 160), on August 31, 2021, Defendants (represented by new counsel) timely produced 11,723 pages of documents including: independent valuations of Petal's equity performed by third-party valuation firms; audited year-end financial statements; monthly financial statements; financial models provided to investors in *every* funding round, as well as closing documents for those rounds; and Petal's federal and state tax returns. Since then, the parties have met and conferred, on, and briefed, numerous discovery issues.  Until September 24, however, Plaintiff raised none of the issues they now purport raise with the Court.  As set forth in  more detail below, Defendants have fully complied with their discovery obligations, and Plaintiff is now engaged in gamesmanship – either to obtain documents to which she is not entitled or to delay the conduct of depositions or both.

The central issues in this litigation are: (1) whether Plaintiff had a novel, concrete business idea that was misappropriated and (2) whether Plaintiff entered into a contract with Defendant Andrew Endicott in 2015 to start a company together.  On the theory that they are required for the purposes of a damages calculation, Plaintiff sought, and prior counsel agreed to produce, documents related to Petal's valuation. Defendants have done so.  Plaintiff has not shown, and cannot show, why she is entitled to more of such material.  The new (and they indeed are new) expanded requests are wholly cumulative of the extensive valuation material already produced. As this Court has often recognized, discovery "must be both relevant and proportional to the needs of the case," and "[p]roportionality focuses on the marginal utility of the discovery sought." *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Trust Co.*, 2018 U.S. Dist. LEXIS 24417, at *23 (S.D.N.Y. Feb. 9, 2018) (BCM). The documents highlighted by Plaintiff are irrelevant to the merits

3



of her claim and have no more than minimal marginal utility relative to the many documents already produced, making further production disproportionate to the needs of this case.

With regard to her purported need for Petal's general ledger (an extraordinarily invasive request), Plaintiff does not even attempt to proffer its relevance to her claims. Plaintiff's references to payments and loans to Defendants and their family members offers no connection the claims or defenses in the litigation. This is unsurprising; Petal's corporate transactions have no bearing on her actual claims, and she has already received documents related to the value of Petal as determined by the market (*i.e.* at the close of each funding round) and by independent valuation firms. Plaintiff's complaints about Defendants' production of the debt financing transaction materials are similarly unavailing. The Court's July 1 Order directed Defendants to produce the "documents provided to lenders in connection with the transactions." (ECF No. 160 at 1.) Plaintiff *sua sponte* seeks to expand that order to *all* communications. Defendants have produced the documents provided to the lenders in connection with these transactions, and as the Court recognized at the June 30 hearing, Plaintiff does not "get every single piece of paper, including every single application for a loan that the company has ever made," simply by mentioning damages. (*See* Ex. A at 57:20-22.) Defendants have complied with their discovery obligations and produced more than enough material for Plaintiff to calculate her alleged damages.

**Issues Identified by Defendants:** In prior correspondence and meet-and-confers, Defendants have identified 15 documents in Plaintiff's productions to date that contain unexplained redactions. None of these redactions appear on Plaintiff's privilege log, and the documents containing those redactions are responsive to Defendants' discovery requests. Plaintiff has no basis to redact documents on grounds other than privilege. In the Second Circuit, "[r]edactions are normally impermissible unless based on a legal privilege" and "are particularly impermissible where," as here, "a confidentiality stipulation and order is in place." *Coventry Cap. US LLC v. EEA Life Settlements, Inc.*, 2020 U.S. Dist. LEXIS 236645, at *25-26 (S.D.N.Y. Dec. 16, 2020) (collecting cases). Defendants have requested that Plaintiff produce these documents without redactions. Plaintiff has not yet done so; she should be ordered to do so.

                                                              Respectfully submitted,

                                                              */s/ Marilyn C. Kunstler*
                                                              Marilyn C. Kunstler

cc: All counsel via ECF