


November 16, 2021

**BY ECF**
The Honorable Barbara Moses
United States Magistrate Judge
Southern District of New York
500 Pearl Street, Room 740
New York, NY 10007

Re: *Shih v. Petal Card, Inc., et al.*, 18-CV-5495 (JFK) (BCM)

Dear Judge Moses:

We represent Plaintiff Cassandra Shih in the above-referenced action. We write jointly with counsel for Defendants in accordance with the Court's November 10, 2021 Order (ECF 241) that the parties submit a joint status letter concerning any unresolved dispute over Defendants' non-privileged redactions to the Petal capitalization tables and related redaction issues.

**A. Plaintiff's Position**

We can report to Your Honor that a portion of this dispute, relating to the excessive redaction of the Petal capitalization tables, has been resolved. Defendants have agreed to produce all capitalization tables without any redactions, along with the related stock purchase agreements that had not been produced pertaining to Petal's Series C investment rounds. At the hearing on November 9, Defendants represented that the completely unredacted capitalization table Plaintiff had attached as Exhibit 8 to the joint status letter (ECF 238) was "a rogue" or an outlier, and that capitalization tables previously produced had been heavily redacted, consistent with the redactions to the last several capitalization tables that Plaintiff challenged as being without a legal basis. Tr. at 56-58 (Nov. 9, 2021) (Ex. 1). In fact, as we believed at the time of the hearing, further examination confirmed that the opposite was true, and that prior to the October 20, 2021 production, 19 of 23 capitalization tables had been produced without redactions. Plaintiff's exhibit at the November 9 hearing was not a "rogue" or outlier, and Defendants' complete redaction of all of the non-aggregate information in the tables (other than for Gross and Endicott) was a recent phenomenon, affecting all five of the capitalization tables produced on October 20.

The remaining redaction issue in dispute concerns the non-privileged redaction of virtually all the contents of transmittal correspondence between Petal on the one hand, and its investors and its valuation firm, on the other, that accompanied financial information and documents provided to those third parties by Petal. The documents comprise some 60 pages of email communications that were produced in heavily redacted form on November 5, 2021. Plaintiff sought this correspondence in order to ascertain which due diligence materials had been provided to which third party and when – information that was not possible to ascertain from the transmitted documents alone and only in some instances discernible from the documents' metadata – as well as any explanations or caveats regarding the materials.

Although Defendants produced a limited set of these accompanying email communications, they redacted from the email strings almost all information other than the email headers. For



example, in two of the documents, information was redacted from the final transmittal email itself. *See* PETAL000136391, PETAL000136397 (Exs. 2-3) (communications with Bay Valuation).[1] Defendants' statement below that they redacted only emails "*other than* the specific email identifying and transmitting the provided documents" is therefore untrue. (*Id.*) In other documents, Defendants did in fact leave the final transmittal email unredacted, but redacted every other word in the email string. *See*, *e.g.*, PETAL000136435 (Ex. 4) (communications with investor GR Capital).[2]

The redacted information in this correspondence likely provides context for the material being transmitted, correlation of this material to documents previously provided, and additional information qualifying or supplementing the materials being transmitted – all to explain Petal's financial condition for the purpose of soliciting investment or obtaining a valuation. Since the information all concerns investment or estimates of value for Petal, the missing information is presumptively relevant to this litigation and Defendants have never argued otherwise. Although Defendants claim Plaintiff "seeks to renegotiate" a compromise, at no time during the parties' discussions of these documents did Defendants request permission to redact relevant information from the transmittal emails, and the first Plaintiff learned of the redactions was when they were produced the evening of November 5, which was too late to be included in the parties' joint status letter. Incredibly, Defendants claim that they "have made significant concessions—including foregoing redactions the parties had agreed upon in the General Ledger—to minimize burden on the Court." In fact, Defendants' refusal, three times, to produce the General Ledger as promised (in June) and ordered by the Court (in October) has only further burdened the Court's and the Plaintiff's resources.

Defendants know that such redactions are improper and impermissible, because they stated as much in the October 1, 2021 joint status letter to the Court (ECF 220):

> Plaintiff has no basis to redact documents on grounds other than privilege. In the Second Circuit, "[r]edactions are normally impermissible unless based on a legal privilege" and "are particularly impermissible where," as here, "a confidentiality stipulation and order is in place." *Coventry Cap. US LLC v. EEA Life Settlements, Inc.*, 2020 U.S. Dist. LEXIS 236645, at *25-26 (S.D.N.Y. Dec. 16, 2020) (collecting cases).

As the *Coventry* decision makes clear, courts uniformly reject non-privileged redactions of business information made on the basis that the redacted material is not relevant or non-public. The redactions to business documents that Defendants made with abandon in the November 5 production obviously do not constitute sensitive personal information like social security numbers,

---

[1] The emails between Petal and the consultants that prepared its 2021 409A share price estimates may be particularly relevant, given that eShares (the company that performed Petal's May 2017 and February 2018 409A estimates) was described at that time as being "eager and willing to provide the work that is legally necessary to justify the granting of stock or options to employees at a price well below the price at which the companies are selling stock to outside investors." William Cohen, *Valuation Shell Game: Silicon Valley's Dirty Secret*, N.Y. Times, Mar. 8, 2017.

[2] Plaintiff is not challenging any privilege redactions to the top level emails exchanged with counsel, *none* of which are identified as such on the face of the documents.



home addresses, medical history, and the like. Indeed, the redactions consist of correspondence with investors and valuation firms about Petal's financial condition and are applied to withhold entire email communications, not discrete information.

Defendants do not even pretend to fit within any recognized exception to the prohibition against non-privileged redactions of otherwise responsive documents. Indeed, in their November 5 production cover letter, which Defendants misleadingly suggest provides all the information in a redaction log, Defendants merely listed 8 Bates numbers and provided the following blanket justification for their wholesale redactions: "Consistent with previous productions and Defendants' position that Plaintiff's requests for financial information are overly broad and seek irrelevant information, Defendants have redacted or withheld confidential and sensitive financial, commercial and personal information from the following documents." Nov. 5, 2021 Letter from K. Barnaby to M. Kunstler (Ex. 9). Defendants thus provide neither a description nor a legal basis for any of their redactions. And Defendants themselves admitted at the November 9 hearing that "there is not a specific rule that permits redactions" of this kind. Tr. at 56:22-58:2 (Ex. 1).

Prior to the recent production, we alerted Defendants, by letter dated October 29, 2021, to the issue of excessive and impermissible redaction of business information from responsive documents. In that letter, Plaintiff requested that Defendants, at a minimum, provide a non-privileged redaction log that contains for each redaction a description of what was redacted, the basis for the redaction, and why Defendants believe the information is not relevant. Defendants refused to provide a log, and instead doubled down on the practice of excessive and unlawful redaction of discoverable business information.

**B. <u>Defendants' Position</u>**

Defendants are proactively working to comply with the Court's discovery schedule and move Plaintiff's three-year old, meritless complaint to resolution. To do so, Defendants have made significant concessions—including foregoing redactions the parties had agreed upon in the General Ledger—to minimize burden on the Court. Defendants have also agreed to produce capitalization tables without redactions, and therefore the only remaining redaction issue relates to redactions on transmittal emails of various financial documents.[3]

The outstanding dispute arises out of negotiations to narrow Plaintiff's more than 250 Requests for production, and a compromise reached to avoid a discovery dispute on the eve of this Court's June 30, 2021 status conference. Specifically, on June 24, 2021, prior counsel for Defendants agreed to produce: 1) "the financial model and pitch deck, to the extent each was provided to the lead investor, from Petal's Series Seed, Series A, Series B, and Series C rounds" and "the financial model and pitch deck provided to the new investor… 'in the recent series C-3 round;'" 2) the "financial model and pitch deck to the extent each was provided to an additional Series C round investor" and "one additional series C-3 round investor" identified by Plaintiff; 3) "final closing documents from the Series Seed, Series A, Series B, and Series C rounds" as well as the Series C-3 round; and 4) "documents provided to Bay Valuation Advisors for its March 12, 2021 409A Valuation of Petal as of February 26, 2021." (Ex. 5, Ltr. of J. Matz to P. Dawson dated June 24,

---

[3] Plaintiff's first paragraph in this joint letter is a red herring, and a waste of limited space – she agrees this issue has been resolved.



2021) Defendants further agreed on June 26 to produce "documents provided to Carta in connection with the most recent 409A valuation that it performed." (Ex. 6, Ltr. of J. Matz to P. Dawson dated June 26, 2021) Plaintiff accepted that agreement. Defendants met each of those commitments.[4]

Defendants produced these valuation and investor materials on August 31, 2021. Nearly a month later, on September 24, 2021, Plaintiff's complaints continued – and broadened. She wrote that she had not received the "communications with" the various valuation and investment firms – material that was not included in the parties' negotiated resolution of the corresponding RFPs in their June correspondence. (Ex. 7, Ltr. of Mr. Kunstler to K. Barnaby dated Sep. 24, 2021) At the October 6 status conference, Your Honor noted that Plaintiff was seeking "the email that says, dear lender, enclosed please find," and also noted that Plaintiff was "saying now that maybe [she]'d like a little more than" the parties originally negotiated. (Ex. 8, Oct. 6, 2021 H'rg Tr. at 49:7-8, 50:11-13 (ECF No. 235)) After meeting and conferring, during which Plaintiff complained that she could not tell which documents were sent to investors or valuators, Defendants agreed to look for and produce transmittal emails, to the extent they exist. Defendant did so on November 5, 2021. In that production, Defendants redacted 1) the privileged communications at the top of each email chain, and 2) the content of the communications in the produced threads *other than* the specific email identifying and transmitting the provided documents. During the parties' good-faith negotiations, Plaintiff sought production of what she calls the "transmittal documents," *i.e.* a record of the previously produced documents being transmitted from one of the Defendants to one of the investors or valuators. Plaintiff has those documents.

Having received what she bargained for, Plaintiff again seeks to renegotiate the parties' agreement to reopen and broaden her burdensome discovery requests. Now she complains that the transmittal email is insufficient, and she is entitled to additional communications—beyond the prior agreement. The redacted information is not a part of or relevant to the agreement for which the documents were produced. Defendants have produced what Plaintiff requested and Defendants agreed to produce. Defendants agreed to produce a limited, specific document as part of a compromise to allow Plaintiff access to the information she requested and avoid a discovery dispute. Withholding the rest of the information contained in those threads, as Plaintiff now complains, violates no court order, rule of discovery, or prior agreement with Plaintiff.

Plaintiff cites *Coventry* for the proposition that redactions are not countenanced, but that case is inapplicable here. *Coventry* merely stands for the proposition that when a specific document has been identified as responsive to a specific discovery request as part of a broad document review, redactions for relevance may be inappropriate. 2020 U.S. Dist. LEXIS 236645, at *25-26 (S.D.N.Y. Dec. 16, 2020). Here, Defendant agreed to produce a limited subset of documents that showed specific information, but did not agree that the documents were relevant or responsive to a particular request. Redactions of the rest of the information contained in the documents, which was not promised, are therefore appropriate here.

---

[4] Additional Stock Purchase Agreements for the Series C round have been located, and are being produced this week.



Plaintiff also claims that she seeks the information behind the redactions to obtain "any explanations or caveats regarding the materials." As Your Honor noted at the October status conference, Plaintiff is "saying now that maybe [she]'d like a little more than" the parties originally negotiated. (Ex. 8, Oct. 6, 2021 H'rg Tr. at 50:11-13 (ECF No. 235)) This after-the-fact justification goes beyond the scope of the parties' original agreement. Defendants agreed that Plaintiff could learn which documents were sent where, and when, and to whom. Defendants never agreed to a comprehensive production of discussions regarding every financial document submitted to valuators and investors, which Plaintiff is seeking now. This is clearly beyond the scope of the parties' agreement and should not be countenanced by this Court.

Finally, Plaintiff again raises the question of a log of non-privilege redactions. Defendants recent productions identified the redacted documents and the basis for the redactions; Plaintiff's motion demonstrates she is well aware of both. Plaintiff has not demonstrated that an additional log is necessary or justified, nor specifically requested one in this joint letter.

Plaintiff's endless campaign of returning to the well with expanding and shifting explanations for new requests for information is a naked fishing expedition following a good-faith agreement reached by all parties, including her. This case should move beyond document discovery and Defendants should not be penalized for seeking to avoid burdening the Court with a discovery dispute.

Respectfully submitted,

*/s/ Steven I. Froot*____
Steven I. Froot

cc: All counsel via ECF