

January 19, 2022

**BY ECF**
The Honorable Barbara Moses
United States Magistrate Judge
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 740
New York, NY 10007

      Re:  *Shih v. Petal Card, Inc., et al.*, 18-CV-5495 (JFK) (BCM)

Dear Judge Moses:

We represent Plaintiff Cassandra Shih in the above-referenced action. We write on behalf of all parties to provide a joint status update pursuant to the Court's Order of November 9, 2021 (ECF 239), as modified by the Court's Order dated December 27, 2021 (ECF 255), in advance of the conference before Your Honor that is scheduled for January 26, 2022.

***Joint Report***. Since the last status conference on November 9, 2021, the parties have conducted depositions of the following parties and nonparties: Plaintiff Cassandra Shih; Defendants Andrew Endicott and Jason Gross; 30(b)(6) representatives of Defendant Petal Card, Inc.; and nonparties Lane Kauder, Yulia Fradkin, Kimberly Gartner and Berk Ustun. Plaintiff previously took the deposition of nonparty Linda Sherry on January 20, 2021. Defendants served a seventh set of document requests on Plaintiff Shih on December 20, 2021; and Second Requests for Admission on January 17, 2022. Defendants produced documents on November 23, 2021, November 30, 2021, December 10, 2021, January 4, 2022, January 10, 2022, and January 17, 2022.[1] The parties have not had settlement discussions since prior to the June 30 status conference.

**A.  <u>Discovery Disputes:  Issues Identified by Plaintiff</u>**

***<u>De-privileged Documents</u>***: By Order dated October 6, 2021 (ECF 228), this Court examined exemplar documents that Defendants had withheld as privileged, ordered most of them produced, defined the scope of the privilege, and instructed Defendants to implement the Order by applying the rulings to all similar documents withheld as privileged. Defendants subsequently produced certain documents on October 20 and 26, 2021. Plaintiff compared the de-privileged documents and Defendants' privilege log entries to the log entries for documents Defendants continue to withhold. (Relevant pages of Defendants' log are attached as Exhibit A.) On December 30, 2021, Plaintiff notified Defendants that it appeared certain documents have not been disclosed, in contravention of the Court's instructions, and requested production or an explanation. By letter dated January 10, 2022, Defendants produced some additional documents and committed to issue a revised privilege log by the end of January 2022, but gave no explanations. Plaintiff believes the following documents are likely not privileged and should be produced:

---

[1] Nonparties have also produced documents since the last status conference, with productions on November 29, 2021 by Deloitte; on December 22, 2021 by EY; and on January 12, 2022 by Berk Ustun. Additional productions are anticipated from Deloitte and EY following Defendants' privilege review of certain documents.



      a.    <u>Communications between Gross and Endicott concerning business topics that do not appear to be "primarily of a legal nature" or reference Jason Gross acting as "'de facto GC.'"</u> (Order at 9-10, 13.) These include PETAL0092596, 102704, and 107701 (dated 1/20/16), for which the attachments – but no transmittal emails – were produced; those emails must be produced. (Ex. A at 18-20.) Similarly, while PETAL107710 was held to be privileged, for other documents that may be shorter versions of the same email chain, only the privileged portion is permitted to be redacted, and the remainder must be produced. These include PETAL0092604, 92605, 102726, 102727 and 107709 (dated 1/21/16) (Ex. A at 21).

      b.    <u>Communications between Gross and Endicott about Plaintiff Cassandra Shih.</u> The Court definitively ruled, without exception, that emails between Gross and Endicott about Ms. Shih, including their discussion of Endicott's March 24, 2016 email to her, did not contain legal advice and are not privileged. (Order at 9.) Documents PETAL0083750-51, 93588-89, and 116490-91 (dated 3/24/16) concern and attach the draft letter that the Court ruled was not privileged. (Ex. A at 23.) Plaintiff had no way of knowing Ken Gross had any involvement or that the asserted privilege was not based on a claim that Jason Gross was GC. By not referring to Ken Gross on the log, Defendants have waived their claim that these materials are privileged.

      c.    <u>Communications between Jason Gross and Ken Gross about Cassandra Shih or the March 24, 2016 email</u>. The Court ruled communications by Jason Gross regarding the March 24, 2016 email were not privileged because the email "was written in lay terms, with no legal analysis." (Order at 9.) This ruling should apply equally to communications with Ken Gross, even if those specific communications were not before the Court on the prior motion. Defendants never documented in what capacity Ken Gross was advising his son or the company; documents produced reveal he was an investor in and lender to CreditBridge, provided advice to his son on business issues, and does not appear to have been retained by CreditBridge. Although Defendants describe Ken Gross as a practicing attorney, they have never identified his affiliation in the relevant period. These Documents are: (i) PETAL0083746-47, 83748-49, 116486-87, and 116488-89 (dated 3/24/16) (Ex. A at 22-23); (ii) PETAL0092006, 102975, and 107937 (dated 3/26/16) (Ex. A at 23-24); and (iii) PETAL0092046, 92050, 92051, 102979, 102983, 102984, 107982, 107986, and 107987 (dated 4/20/16) (Ex. A at 24).

      ***<u>Obstruction of Petal Card, Inc. Rule 30(b)(6) Deposition:</u>***  Plaintiff took the Rule 30(b)(6) deposition of Defendant Petal Card, Inc. on January 13, 2022. Defendants' counsel repeatedly obstructed the deposition by instructing Petal Card, Inc.'s corporate designees not to answer a dozen questions that Defendants' counsel claimed were beyond the scope of the noticed topics. Many of the questions concerned a corporate reorganization undertaken in late 2021, whereby Petal Card, Inc. was placed into a holding company, Petal Technology Holdings, Inc. ("PTHI"), with a corporate affiliate, Prism Data Technologies, Inc. ("Prism"), which may license underwriting technology to other businesses. Shares of Petal Card, Inc. were exchanged for PTHI stock, meaning that Petal's shareholders apparently own both Petal and Prism. The reorganization has not been publicly disclosed and Plaintiff's counsel only learned about it during the deposition of Defendant Endicott on January 7, 2022.[2] Defendants' counsel's instructions not to answer based on relevance were contrary to law and obstructed the deposition. Fed. R. Civ. P. 30(c)(2)

---

[2] The April 2021 press release Defendants cite refers to Prism as a "product" or "platform," not an entity, and says nothing about PTHI or the reorganization in late 2021; PTHI and Prism were not incorporated until October 2021.



("A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)."); *Fashion Exchange LLC v. Hybrid Promotions, LLC*, 333 F.R.D. 302, 307 & n.6 (S.D.N.Y. 2019) (imposing sanctions after the Court ordered a second 30(b)(6) deposition because counsel "repeatedly objected and interfered with the deposition on the basis that the question was outside the scope of the noticed topics"; scope of deposition is defined by Rule 26, not the noticed topics).  Plaintiff's counsel identified this authority at the deposition, but Defendants persisted in their obstruction.[3]  Notably, they make no attempt to justify their impermissible instructions here.  We respectfully request that the Court order Petal Card, Inc.'s designees to appear for a follow-up deposition that is not obstructed by impermissible instructions not to answer.

*Response to Defendants' Issues:*   Defendants claim they have complied with their obligations, but the timing of certain document productions demonstrates otherwise. For example, Defendants only produced on January 17, 2022, purported records of Skype calls between Plaintiff and Defendant Endicott that (1) appear to have been generated in November 2020, (2) are responsive to demands issued in February of 2019, but (3) were only produced after Mr. Endicott's deposition. Plaintiff is still reviewing and investigating this recent production, and others, and reserves the right to seek court intervention to address these issues, including noticing Defendant Endicott for examination on the newly produced Skype documents.

Plaintiff obviously disagrees with Defendants' self-serving recitation at the end of this letter, which is unrelated to the issues raised herein.

### B. Discovery Disputes:  Issues Identified by Defendants

Defendants have fully complied with the discovery orders in this case. Two discovery requests to Plaintiff remain outstanding: two RFPs, addressed to Plaintiff on December 20, 2021, and two RFAs, dated January 17, 2022, designed to confirm Lane Kauder's identity as the sender and recipient of certain messages. Plaintiff has until January 20 and February 16, respectively, to respond to those requests. Plaintiff, by contrast, seeks to extend fact discovery in this case beyond all rational limit and proportionality, to delay the inevitable reckoning on her specious claims.

*Response to Plaintiff:*

**Privileged Documents.** Plaintiff's challenge is so untimely as to be waived, and is meritless. On October 20 and 26, per the Court's October 6 Order, Defendants produced hundreds of logged documents. Not until December 30 did Plaintiff raise any issue with those productions. Defendants responded on January 10, disclosing three copies of a single document. Concerning *communications between Gross and Endicott*, the items cited are shorter versions, or exact duplicates of, the email thread that the Court reviewed *in camera* and ruled was properly withheld. (PETAL 107710; ECF No. 228 at 13.) Regarding *communications between Gross and Endicott about Plaintiff*, Defendants produced two of the items in full on October 20 (PETAL 092000 and 107988). PETAL 083750, 093588, and 0116490 are identical versions of an e-mail logged as privileged because it reflects legal advice from Ken Gross to CreditBridge, Inc., to which Plaintiff

---

[3] Defendants also obstructed the deposition of Berk Ustun on January 17, 2022, by instructing the witness, who serves as Technical Advisor to Petal Card and Prism, not to answer questions about Prism, including the question, "What is the nature of the Prism Data business?", solely on the grounds that Prism's "activities have no relevance to this case."



did not previously object and the Court's October 6 Order did not address. As for *communications between Jason and Ken Gross*, Plaintiff's objections are waived. Such objections were to be made by July 28, 2021, which Plaintiff did not do. *See* ECF No. 177; *see also* ECF No. 178 at 2, n.1; *GE v. APR Energy PLC*, 2021 U.S. Dist. LEXIS 245126, at *11 (S.D.N.Y. Dec. 22, 2021) (rejecting a privilege challenge where a party's "failure to file a timely motion demonstrates that it lacked diligence in conducting discovery and complying with the discovery scheduling order").

*30(b)(6) Deposition*. Plaintiff's request to reopen the 30(b)(6) deposition of Petal Card, Inc. ("Petal") is frivolous. Plaintiff contends that she was not permitted to inquire into Prism Data Technologies, Inc. ("Prism") or Petal Technology Holdings, Inc. ("PTHI"). Plaintiff omits that Prism, including its affiliation with Petal, has been publicly disclosed since April 2021.[4] It is neither a subsidiary nor a parent of Petal. As for PTHI, it is a holding company, of which Petal is now a subsidiary. That reorganization occurred on October 20, 2021. The 30(b)(6) witnesses testified that no intellectual property was transferred from Petal to either of the other two entities, and the witnesses answered numerous questions about both entities, including questions concerning when PTHI was incorporated; its subsidiaries; transfer of equity to PTHI; whether any 409A valuations exist for PTHI; the Directors of PTHI and its subsidiaries; the existence of an equity ledger or stock plan for PTHI; whether PTHI anticipates any equity raises; whether PTHI has entered into any debt financing transactions; whether PTHI has explored a liquidity event; agreements entered into by PTHI; and whether any assets have been transferred between Petal and Prism and the nature of the accounting relationship between those entities. Plaintiff has not, and cannot, establish how further testimony on these matters is either relevant or proportional to the needs of the case. *See, e.g., Bigsby v. Barclays Capital Real Estate, Inc.*, 329 F.R.D. 78, 81 (S.D.N.Y. 2019) ("[A] Rule 30(b)(6) deposition notice is subject to the limitations under Federal Rule 26" and "[t]he deposition topics must be 'relevant to any party's claim or defense'") (citing Fed. R. Civ. P. 26(b)(1)).

The matters Plaintiff raises now are a distraction, designed to inflict yet more cost and burden on Defendants, now that the facts are in: Plaintiff is not a co-founder of Petal and the company was not based on her idea. Gross, Petal's actual co-founder and CEO, was independently developing the ideas that led to Petal well before Shih ever discussed her "idea" with Endicott. Shih never once met with or spoke to Gross prior to the company's incorporation. And Shih and Endicott did not speak further after June 6, 2015. There is no contract or shred of paper to substantiate her claim that she was offered equity or ownership in any company, or that it was even discussed. Her claim to own a business and a business idea invented by Gross is simply false.

Petal helps to provide Visa credit cards to U.S. consumers that are traditionally treated as high risk by mainstream credit providers, using a proprietary underwriting technology that uses U.S. financial transaction information and big data. The first Petal cards were issued on October 2, 2018. In Q1 2015, Gross was already developing the idea to use big data to expand access to credit in the U.S. for young people and other traditionally high-risk consumers. In Q2, Endicott was thinking about ways to develop a U.S. credit score comprising foreign data generated by immigrants in their home countries. Endicott spoke to many people about his idea; Plaintiff was

---

[4] www.prweb.com/releases/introducing_prism_data_and_the_cashscore_petal_s_transaction_intelligence_platform_and_cash_flow_underwriting_now_available_to_the_broader_market_for_the_first_time/prweb17894138.htm.
Prism's Online Privacy Policy, which is publicly available and was effective April 21, 2021, also expressly identifies the entity, Prism Data Technologies, Inc.  See https://www.prismdata.com/privacy-policy

4



one of those people (they also discussed a company that would offer boat tours of Antarctica). The "idea" Shih "came up with," as referenced in the May 8, 2015 email, was neither of these. Shih advocated for something distinctly different: a service that would "co-sign the credit of new migrants" by acting as a guarantor. Shih rejected Endicott's idea of developing "an alternative form of credit scoring," and Endicott and Gross rejected Shih's idea. By no later than July 20, 2015, Endicott and Gross were working on Gross's product idea (never discussed with Shih): a flexible secured credit card using big data to help underwrite the user for unsecured credit. The intended market was U.S. students and others traditionally considered high risk—a broader category than immigrants. That is the product solution Gross and Endicott were developing when they incorporated CreditBridge in 2016, and the precursor to the product that Petal eventually launched. These are all matters of record. When Shih contacted them in 2016, Defendants told her that their product idea had nothing to do with hers. They wished her well and encouraged her to pursue her idea. And they moved on, with a team of world-class data scientists, engineers, and financial services experts, to found Petal.[5]

Respectfully submitted,

*/s/ Marilyn C. Kunstler*
Marilyn C. Kunstler

cc: All counsel via ECF

---

[5] The foregoing is drawn from material from Defendants' files, produced in this matter to Plaintiff, but not received by Defendants in discovery.