

April 18, 2022

**BY ECF**
The Honorable Barbara Moses
United States Magistrate Judge
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 740
New York, NY 10007

      Re:  *Shih v. Petal Card, Inc., et al.*, 18-CV-5495 (JFK) (BCM)

Dear Judge Moses:

      We represent Plaintiff Cassandra Shih in the above-referenced action. We write on behalf of all parties to provide a joint status update pursuant to the Court's Order of January 26, 2022 (ECF 264), in advance of the conference before Your Honor that is scheduled for April 20, 2022.

      *__Joint Report__*. Since the last status conference on January 26, 2022, the parties have conducted follow-up depositions of Defendant Andrew Endicott and a 30(b)(6) representative of Defendant Petal Card, Inc.  Defendants produced documents on February 11 and 15, March 3 and 22, and April 8, 2022.[1] The parties served three opening expert reports on March 17, 2022. Rebuttal expert reports are due on April 20, 2022.  The parties participated in unsuccessful private mediation on September 24, 2018 and engaged in limited settlement discussions thereafter, but there have been no settlement communications since June 2021.

      Having conferred in connection with the preparation of this joint letter, the parties respectfully request that the Court hold in abeyance the deadline for expert depositions, currently to be completed by May 17, 2022, and subsequent deadlines under the operative Scheduling Order as amended (ECF 239, ECF 255), for the purpose of allowing the parties to explore settlement, likely via mediation.  The parties propose to report back to the Court on the progress of those efforts by joint letter no later than June 1, 2022.  Each party reserves the right to request that the Court reinstate the discovery schedule if discussions regarding the settlement process or settlement discussions themselves are unproductive.

**A.**  **Discovery Disputes:  Issues Identified by Plaintiff**

      *2021 Annual Financial Statements.*  On February 8, 2022, Plaintiff wrote to Defendants requesting production of updated financial information regarding Defendant Petal Card, Inc. pursuant to Fed. R. Civ. P. 26(e).  The materials requested included documents from Petal's recently concluded Series D equity raise, agreements relating to the exchange of equity in Petal Card Inc. for shares of a new holding company, Petal Technology Holdings, Inc. ("PTHI"), and annual financial statements (unaudited drafts prepared by the company and audited when available).  This information is relevant to, among other things, the valuation of Defendant Petal Card, Inc., which is the subject of an opening expert report submitted by Plaintiff and which we expect will be the subject of a rebuttal expert report from Defendants that is now due on April 20, 2022.  The parties exchanged correspondence, met-and-conferred by telephone on February 21

---

[1] Nonparty EY made a further production on February 4, 2022.

BSF

and 28, and reached an agreement by which Defendants produced several categories of information, including monthly financial information for Petal Card, Inc. through December 2021.

One issue remained open. Plaintiff had requested the unaudited year-end 2021 financial statements for Petal Card, Inc., which were an update to Request No. 35 of Plaintiff's Second RFPs, served April 7, 2021. RFP 35 sought "Documents sufficient to show the following for Petal and CreditBridge: . . . b. All financial statements issued to any person reporting the income, balance sheet, and cash flows for any period since formation, whether prepared internally, unaudited, or audited." Defendants offered to produce cumulative monthly financials for Petal, including for December 2021, but not the year-end financial statements, which Plaintiff understood were the unaudited financial statements, including notes to the financial statements, that Petal provides to its auditors. (Plaintiff recognized that the audited financial statements would not have been available at that point in the year and prior to the submission of opening expert reports.)[2]

Defendants ignore that it was their repeated evasive answers to Plaintiff's direct question that left this issue open. Defendants appear to concede below that *some entity* not "associated with Defendants" has already drafted year-end financial statements that reflect Petal Card, Inc.'s financials, including notes to financial statements. And they do not credibly dispute that explanatory notes are an "integral part" of year-end financial statements, including the financial statements Petal produced for previous years.[3] These confusing statements are mirrored by those made by Defendants during five weeks of meet-and-confer correspondence, when they stated:

- "With respect to your request for annual unaudited financial statements, Petal Card, Inc. ('Petal') ***does not have any additional documents to produce*** beyond the financial statements prepared on a monthly basis for 2021, which are already included in our prior proposals." Ex. 1, Mar. 1, 2022 Ltr. from K. Barnaby (emphasis added).

- "Petal ***does not have unaudited financials*** in a FY 2021 view." Ex. 2, Mar. 1, 2022 email from K. Barnaby (emphasis added).

- "Once Petal closes the books for December, the unaudited financial statements ***are considered*** the annual unaudited financial statements." Ex. 2, Mar. 11, 2022 email from G. Fish.

In other words, Defendants took the position that the monthly financials Petal had produced *were* the unaudited annual financial statements reflecting Petal's results, which is not accurate. And, although Defendants assert that Plaintiff can "derive" Petal's annual financial statements from the monthly financials, this is in fact not possible, because the monthly financials do not contain, among other things, year-end adjustments and explanatory notes. As Plaintiff had already pointed

[2] Defendants' footnote 6 misstates the parties' meet-and-confer discussions with Defendants' prior counsel. In fact, while it is true that Defendants *tried to* impose a condition that Plaintiff "will not seek more monthly financials in the discovery process," Plaintiff *rejected* that condition and expressly reserved the right to obtain further updates to financial information.

[3] FASB Codification ASC 235-10-50-1 (required disclosures in notes to financial statements under GAAP).

Case 1:18-cv-05495-JFK-BCM   Document 269   Filed 04/18/22   Page 3 of 6



out, Petal's prior audited financial statements made it clear that annual financial statements are a separate and more comprehensive set of documents:

> We have audited the accompanying consolidated financial statements of Petal Card, Inc. (the Company), which comprise the consolidated balance sheet as of December 31, 2019, and the related consolidated statement of operations, changes in consolidated stockholders' equity and cash flows for the year then ended, and the related notes to the consolidated financial statements.

Ex. 2, Mar. 14, 2022 email from D. Blaisdell (quoting PETAL000029699, Petal's FY 2019 audited financial statement). Defendants' counsel's last word on the subject was that "***Petal*** has not prepared that document." Ex. 2, Apr. 8, 2022 email from G. Fish (emphasis added). The likely import of this answer (and Defendants' further statements below) is that an entity other than Petal *has* prepared annual consolidated financial statements that reflect the financial performance and notes pertaining to Petal Card, Inc., but that Defendants are declining to produce them.

None of Defendants' arguments justifies their withholding the annual financial statements. As to procedure, *Defendants themselves* have previously raised discovery disputes in joint status letters without objection from Plaintiff or this Court. *See, e.g.*, Oct. 1, 2021 Joint Status Letter, Dkt. No. 220, at 4 (Defendants' request for an order that Plaintiff produce documents without redactions). Plaintiff's request is also timely made. Plaintiff could hardly have requested updated FY 2021 financials earlier than the first quarter of this year, and it was Defendants who dragged out the process with repeated evasive communications, the last of which was received on *April 8*. Nor did Plaintiff waive the issue by accepting production of other financial materials. Not only does the email quoted by Defendants below expressly note that the question of financial statements remains "open," but Defendants' refusal to answer Plaintiff's question (before and after the March 2 email) deprived Plaintiff of basic facts regarding the existence of these documents.

Defendants' further argument – that the documents can be withheld because they are seemingly in the possession of the holding company PTHI or some other entity – should be rejected. First, Plaintiff's RFPs expressly sought documents from successors and assigns of Petal Card, Inc.[4] Second, Defendants have not made any showing that the documents are not in the possession, custody, or control of Petal Card, Inc., including because Defendants have the practical ability to obtain them, a point they do not address. Third, as part of the restructuring, shares of Petal Card, Inc. were exchanged for PTHI stock, meaning that the value of PTHI is relevant to understanding the value of Defendant Petal Card, Inc. Finally, there is no dispute that the annual financial statements being sought reflect the financials of Petal Card, Inc., so Defendants should not be able to refuse production solely because they were technically prepared by another entity.

The information that Defendants communicate below in footnotes 7, 8, and 9 and related text, like their prior communications over many weeks, are hard to decipher and raise more questions than they answer. Why state that Plaintiff can "derive" annual statements "from the information that has been produced," rather than stating whether there are in fact such annual statements? Why state that the information has "not yet been generated by Defendants or for

---

[4] Pltff's 2nd RFPs at 3 ("'Petal' shall refer to Defendant Petal Card, Inc., and its employees, agents, partners, representatives, successors, assigns, and any entity controlled by Petal Card Inc., including but not limited to Petal Trust, Petal Trust I, Petal Funding, PFIH, and CreditBridge.").

3

BSF

Defendants, or by any or for any corporate affiliate of Petal," rather than stating whether the requested financial statements have in fact been prepared? And why do they continue to refer cryptically to "the financial statements for an entity *other* than Defendant Petal Card, Inc.," rather than stating that the results for Petal Card are contained in the consolidated financial statements of the holding company?

Plaintiff respectfully requests that the Court order Defendants to produce the draft annual financial statements that reflect the financial performance and transactions entered into by Defendant Petal Card, Inc. and the audited statements when available.

## B. Discovery Disputes: Issues Identified by Defendants

Since the last joint status report, Defendants have worked with Plaintiff to resolve all raised discovery issues and ensure that this litigation moves forward efficiently under the current schedule. Defendants have been cooperative in responding to all reasonable discovery requests arising out of the depositions of Petal Card, Inc. and the individual Defendants, and updating financial information, which have led to productions over the past months.

***Response to Issue Identified by Plaintiff.*** Plaintiff attempts to use this joint status letter as an improper and untimely motion to compel that disregards this Court's orders and Individual Practices (ECF No. 62, ¶ 5),[5] ignores the express agreement of the parties, and seeks information that Defendants have repeatedly informed Plaintiff does not exist and that Plaintiff has not even requested in the first place. Plaintiff's request that the Court "order Defendants to produce the draft annual financial statements . . . and the audited statements when available" should be denied.

Plaintiff's request is a blatant attempt to end-run the express agreement of the parties, pursuant to which Defendants voluntarily produced certain specifically enumerated documents in response to 25 untimely requests from Plaintiff; such production was conditioned on Plaintiff's agreement that the production would fully satisfy all her requests for information and resolve all outstanding disputes. Plaintiff agreed. Plaintiff now seeks to renege on her agreement, something this Court should not countenance. *See* 10/6/2021 Hr'g Tr. at 46:15-16 ("THE COURT: . . . I need to be able to at least rely on the parties sticking to the deals that they made.").

Specifically, on February 8, 2022—nine days before the repeatedly extended deadline for completion of fact discovery—Plaintiff sent Defendants a letter seeking fourteen categories of information, including, as relevant here, "Consolidated financial statements of the Petal entities

---

[5] Plaintiff's complaint, which is raised nearly 2 months after the February 17, 2022 fact discovery cutoff and nearly 1 month after the parties' submission of opening expert reports, is untimely and improperly disregards this Court's Individual Practice 2.b governing discovery motions, as well as the Court's prior orders. *See* ECF No. 62, ¶ 5 ("Discovery applications, including letter-motions requesting discovery conferences, must be made promptly after the need for such an application arises and must comply with Local Civil Rule 37.2 and Part II.B of Judge Moses's Individual Practices. Absent extraordinary circumstances, discovery applications made later than 30 days prior to the close of discovery may be denied as untimely.") In response, Plaintiff argues that she could not have requested "FY 2021 financials earlier than the first quarter of this year," which does not address the fact that Plaintiff waited until mid-April to raise this issue through an improper procedure, despite having Defendants' production—including financial information requested in the first quarter—more than 6 weeks ago. Plaintiff does not dispute that she has not complied with the Court's Individual Practices, nor offered a basis for her failure to do so here. Should the Court entertain Plaintiff's request (it should not), Defendants respectfully request the opportunity to brief the issue in accordance with the Court's Rules and Individual Practices.


for FY 2021 (unaudited financial statements that are available now; audited financial statements as soon as they are available)." On February 10, 2022, Plaintiff sent another letter with 11 separate questions and requests for further information. Defendants objected in writing to these informal letter requests as untimely and in violation of both applicable case law and this Court's order requiring discovery requests be served in time to allow the receiving party to respond on the schedule set forth in the Federal Rules of Civil Procedure. (ECF No. 62, ¶ 5.) Although Defendants maintained their objections to the propriety of Plaintiff's requests, in the spirit of compromise, Defendants met and conferred extensively with Plaintiff and ultimately agreed to produce specific enumerated documents, subject to the expressly stated condition that Plaintiff agree the proposed production would "fully satisfy all requests in Plaintiff's February 8 and 10 letters and that Plaintiff [would] not further request such documents and information." (Ex. 1 (March 1, 2022 Ltr. from K. Barnaby).) The enumerated list included "[u]naudited monthly financial statements of Petal Card, Inc. through December 31, 2021." (Ex. 3 (Feb. 25, 2022 Ltr. from K. Barnaby).)

On March 2, Plaintiff asked about the existence of *annual* unaudited financial statements. (Ex. 2 at 4 (Mar. 2, 2022 E-mail from D. Blaisdell).) Nonetheless, Plaintiff expressly agreed in that correspondence that, regardless of her question, Defendants' proposed production would resolve all discovery disputes, including as to the information Plaintiff seeks now: "***Notwithstanding the preceding open question, Plaintiff agrees that the production you have offered in your letters of March 1 and February 25 . . . will satisfy all requests in Plaintiffs' February 8 and February 10, 2022 letters and that this resolves all remaining disputes between the parties concerning the items sought in those letters.***" (*Id.*) Defendants made the agreed-upon production the following day in good faith reliance on Plaintiff's agreement. Plaintiff now seeks to undo her agreement on the basis that there was an "open" question, despite the fact that her stated agreement was expressly made "[n]otwithstanding [the] open question" (a point Plaintiff is understandably silent on), by asking this Court to disregard her express commitment to forego additional documents beyond those agreed to by the parties.[6]

Plaintiff's request is also futile as the information does not exist, is not subject to any discovery request, and Defendants have not agreed to produce it. Defendants already produced Petal's unaudited financial statements—including its balance sheet, statement of cash flows, and income statement—for each month in 2021, *i.e.*, the company's financial statements. Defendants have repeatedly informed Plaintiff that an "annual view" of the unaudited financial statements has not been prepared (but is simple for Plaintiff to derive from the information that has been produced).[7] In this letter, Plaintiff for the first time states that she seeks year-end financial statements for information regarding "year-end adjustments and explanatory notes." Those financial statements and notes have not yet been generated by Defendants or for Defendants, or by any or for any corporate affiliate of Petal. Nor had Plaintiff previously requested that draft

---

[6] Although Plaintiff also characterizes the requested information as an "update" to RFP No. 35, she omits that the parties negotiated the scope of that request last summer, at which time Defendants expressly *refused* to produce all financial statements prepared by Petal from March 1, 2021 through the end of the litigation. In response, Plaintiff agreed to accept production of financial statements through the end of June 2021. As such, the material recently produced by Defendants was produced voluntarily and consistent with the parties' express agreement as to the scope of production.

[7] Plaintiff suggests that this is not the case, but financial information presented on an "annual" level is simply comprised of the financial information from the individual months within the corresponding annual period.



information, or did Defendants agree to produce it (now or ever).[8] To the extent that Plaintiff seeks the financial statements of an entity *other* than Defendant Petal Card, Inc., such documents are likewise outside the scope of discovery served by Plaintiff and negotiated extensively by the parties.[9]

In addition to all of the foregoing reasons why Plaintiff's request is meritless and should be denied, Plaintiff's repeated assertion (without any support) that an entity *other* than Petal Card, Inc. has already prepared the information Plaintiff seeks, including explanatory notes, is simply, not true.  It is unclear what Plaintiff finds "confusing" or "hard to decipher," and why she continues to harass Defendants and burden the Court despite being repeatedly and clearly told by Defendants that—even putting aside her lack of entitlement to it—the information that she is asking for does not exist.

Respectfully submitted,

*/s/ Marilyn C. Kunstler*
Marilyn C. Kunstler

cc:  All counsel via ECF

---

[8] Plaintiff's effort to conflate "notes" with "financial statements" is belied by the very language she cites in support, which distinguishes between "consolidated financial statements [comprised of specific items] . . . ***and*** the related notes to the consolidated financial statements."  (emphasis added.)

[9] Plaintiff argues that she is entitled to documents from other entities, including Petal Technology Holdings, Inc. because her Requests for Production include Petal Card, Inc.'s "successors and assigns," but Petal Card, Inc. continues to exist as an operating entity.  Plaintiff has known about Petal Technology Holdings, Inc. since at least early January; she could have served additional document requests at that time with sufficient time for Defendants to respond before the end of fact discovery, but she chose not to (and still has not done so). In addition, Plaintiff's argument again simply ignores that Plaintiff agreed to accept Petal Card, Inc.'s unaudited monthly financial statements (among numerous other documents) in full satisfaction of her requests.